Exhibit 6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| SAUNDRA B. LANE, | ) | C.A. No. |
|  | ) |  |
| Plaintiff, | ) | **06-40178** |
|  | ) |  |
| v. | ) | *FDS* |
|  | ) |  |
| LAWRENCE SALANDER and | ) |  |
| SALANDER-O'REILLY GALLERIES, LLC, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## VERIFIED COMPLAINT

### PARTIES

1.      Plaintiff Saundra B. Lane ("Lane") is an individual residing in Lunenburg, Massachusetts.

2.      Upon information and belief, Defendant Lawrence Salander ("Salander") is an individual residing in New York, New York.

3.      Upon information and belief, Defendant Salander-O'Reilly Galleries, LLC (the "Gallery") is a Limited Liability Company organized under the laws of New York with a principal place of business in New York, New York.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

```
RECEIPT # 404878
AMOUNT $    3 50.00
SUMMONS ISSUED_____✓
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. _____
DATE____ 8/23/06
```

5.     This Court has personal jurisdiction over both Defendants pursuant to the

Massachusetts long-arm statute, M.G.L. c. 223A, § 3. Moreover, both Defendants contractually

consented to personal jurisdiction in the Commonwealth of Massachusetts.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL COUNTS

### Lane Sells the Painting to Salander and Salander Executes a Promissory Note

7.     Lane owned an oil on canvas painting by Charles Sheeler entitled *Newhaven*

(1932) (the "Painting").

8.     On or about April 1, 2005, Lane sold the Painting to Salander for $9,173,261. A

true and complete copy of the Bill of Sale for the Painting is attached hereto as Exhibit A.

9.     Salander executed a Promissory Note in favor of Lane on or about April 1, 2005

in the principal amount of $9,173,261 with interest in the amount of five *per cent per annum*. A

true and complete copy of the Promissory Note is attached hereto as Exhibit B.

10.     The Promissory Note sets a schedule of installment payments of both principal

and interest beginning on June 30, 2005 and ending on January 31, 2007. It also provides a "late

charge" equal to five *per cent* for installments not paid within fifteen days of the due date and

requires Salander to pay Lane's costs of collection, including attorneys' fees. Promissory Note,

¶ 4, ¶ 8. The Promissory Note provides that Massachusetts law applies and that federal or state

courts in Massachusetts have exclusive jurisdiction of actions on the Promissory Note.

Promissory Note, ¶ 11.

11.     Upon default, which includes the failure of Salander to remit payment within ten

days after an installment becomes due and payable, the entire unpaid principal balance of the

- 2 -

Promissory Note and all unpaid accrued charges and interest is immediately due and payable at Lane's option and without notice or demand. Promissory Note, ¶ 6.

**The Gallery Executes an Unconditional Guaranty**

12.     On or about April 1, 2005, the Gallery executed an unconditional guaranty to Lane of Salander's obligations under the Promissory Note (the "Guaranty"). A true and complete copy of the Guaranty is attached hereto as Exhibit C.

13.     The Guaranty provides that Massachusetts law applies and that federal or state courts in Massachusetts have jurisdiction of actions on the Guaranty.

**Salander and the Gallery Execute a Security Agreement**

14.     In connection with the Promissory Note and Guaranty, Lane, Salander, and the Gallery executed a Security Agreement dated April 1, 2005, as amended February 28, 2006 (the "Security Agreement"). A true and complete copy of the Security Agreement is attached hereto as Exhibit D.

15.     The Security Agreement is governed by Massachusetts law. Security Agreement, ¶ 6(f).

16.     Pursuant to the Security Agreement, Lane may enter any premises on which the specified Collateral is located and remove it upon a Default under the Promissory Note. Security Agreement, ¶ 5.

17.     The Security Agreement also provides that Lane may conduct a public sale of the Collateral upon fifteen days' notice to Salander and the Gallery upon a Default under the Promissory Note. Security Agreement, ¶ 5.

- 3 -

**Salander's Defaults**

18.    Salander failed timely to make the installment payment due March 31, 2006 in the amount of $672,310.  Slander made a partial payment in the amount of $500,000 on April 19, 2006.  Salander subsequently made a second partial payment in the amount of $100,000.  Salander's failure to make the entire March 31, 2006 payment timely is an Event of Default under the Promissory Note.

19.    Salander has also failed to make the installment payments due June 30, 2006 and July 31, 2006.  Salander's failures to make the June 30 and July 31, 2006 payments is each an Event of Default under the Promissory Note.

20.    Salander has acknowledged his obligations under the Promissory Note and promised to make the overdue payments, but has failed to do so.  True and complete copies of a July 18, 2006 letter from Salander and an August 1, 2006 e-mail from Slander are attached hereto as Exhibit E.

21.    As a result of Salander's defaults, the entire outstanding principal balance of $6,718,220 is now due and owing.

## COUNT I
### (Breach of Contract – Promissory Note)

22.    Lane reavers and incorporates herein paragraphs 1-21 above.

23.    The Promissory Note is due and payable in full, and Salander is liable for the entire outstanding principal amount and all interest thereon.  Salander is also liable for late charges in the amount of $83,615.50 and Lane's costs of collection, including attorneys' fees.

24.    Salander has failed to make the payments called for by the Promissory Note.

25.    By his above described actions, Salander has breached his obligations under the Promissory Note.

- 4 -

26.     Salander's breaches of the Promissory Note have caused Lane substantial

damages.

### COUNT II
### (Breach of Contract – Guaranty)

27.     Lane reavers and incorporates herein paragraphs 1-26 above.

28.     Upon Salander's default under the Promissory Note, the Gallery is obligated to

pay all amounts Salander owes to Lane under the Promissory Note "without demand or notice of

any nature." Guaranty, ¶ 1.

29.     The Gallery has failed to make the payments called for by the Guaranty.

30.     By its above described actions, the Gallery has breached its obligations under the

Guaranty.

31.     The Gallery's breaches of the Guaranty have caused Lane substantial damages.


WHEREFORE, Lane prays that the Court:

A.      Enter judgment in her favor on Count I against Salander in the amount of (1) the

outstanding principal balance of the Promissory Note, $6,718,200, and all accrued interest

thereon; (2) late charges in the amount of $83,615.50; and (3) Lane's costs of collection,

including attorneys' fees;

B.      Enter judgment in her favor on Count II against the Gallery in the amount of (1)

the outstanding principal balance of the Promissory Note, $6,718,200, and all accrued interest

thereon; (2) late charges in the amount of $83,615.50; and (3) Lane's costs of collection,

including attorneys' fees;

C.    After notice and a hearing, enter a Preliminary Injunction ordering Salander and

the Gallery to deliver to or make available to Lane without protest the collateral specified in the

Security Agreement; and

D.    Grant such other and further relief as this Court deems just and proper.

SAUNDRA B. LANE

By her attorneys,

Joseph F. Shea (BBO #555473)
Heather B. Repicky (BBO # 663347)
NUTTER MCCLENNEN & FISH LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
Tel: (617) 439-2000

Dated: August 22, 2006

## VERIFICATION

I, Saundra B. Lane, hereby verify under oath that I have read the foregoing Verified
Complaint and that the facts contained therein are true and correct to the best of my knowledge
based upon personal knowledge or upon information and belief, in which instances I belief the
information to be true.

Subscribed and sworn to by me under the pains and penalties of perjury on this 22nd
day of August 2006.

Saundra B. Lane

1555070.3

- 6 -



## BILL OF SALE

This Bill of Sale ("Bill of Sale") is made by and between Saundra B. Lane, an individual with a mailing address of 300 Holman Street, Lunenburg, MA 01462-1706 (the "Seller") and Lawrence Salander, an individual with a mailing address of c/o Salander-O'Reilly Galleries, LLC, 20 East 79 Street, New York, NY 10021 (the "Buyer").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Assignment of Painting by Sellers</u>. In consideration of the execution and delivery by Buyer of the certain Promissory Note dated as of even date herewith in the original principal amount of Nine Million One Hundred Seventy-Three Thousand Two Hundred Sixty-One Dollars ($9,173,261), to which this Bill of Sale is attached as Exhibit A, Seller hereby transfers, sells, assigns, conveys, releases, delivers and sets over unto Buyer, its successors and assigns forever, all of her rights, title and interest in and to that certain painting by Charles Sheeler entitled *New Haven* (the "Painting").

2. <u>Bill of Sale Binding</u>. This Bill of Sale and the provisions herein contained shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, successors and assigns.

3. <u>Representation and Warranty of Seller</u>. Seller warrants to Buyer that Seller has good, valid and marketable title to the Painting, free of any liens, claims or encumbrances.

4. <u>Acceptance by Buyer</u>. Buyer hereby accepts title and delivery of the Painting as of the date hereof, in "as is, where is" condition, and acknowledges that the Painting is free from any damage, defects or blemishes as of the date hereof.

5. <u>Governing Law</u>. This Bill of Sale shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without giving effect to choice of law or conflicts of law rules or provisions.

IN WITNESS WHEREOF, the parties have executed and delivered this Bill of Sale as of the 1st day of April, 2005.

"BUYER"                                              "SELLER"

_____                    _____
Lawrence Salander                                    Saundra B. Lane

1453864.3

## PROMISSORY NOTE

$9,173,261

New York, New York
April 1, 2005

**FOR VALUE RECEIVED**, Lawrence Salander, an individual with a mailing address of c/o Salander-O'Reilly Galleries, LLC, 20 East 79 Street, New York, NY 10021 ("Maker"), promises to pay to the order of Saundra B. Lane, an individual with a mailing address of 300 Holman Street, Lunenburg, MA 01462-1706 ("Holder") or at such other place as Holder of this Note may designate in writing, the principal sum of Nine Million One Hundred Seventy-Three Thousand Two Hundred Sixty-One Dollars ($9,173,261), together with interest thereon at the rate of five percent (5.00%) per annum, with installment payments to be made in accordance with Paragraph 2 below. All outstanding principal and accrued interest shall be due and payable immediately on the sooner to occur of (a) January 31, 2007, or (b) an Event of Default (as defined below) (the "Maturity Date").

     1.    <u>Bill of Sale</u>. This Note is made and delivered in accordance with the sale of that certain painting by Charles Sheeler entitled "Newhaven" from Holder to Maker pursuant to that certain Bill of Sale of even date herewith attached hereto as <u>Exhibit A</u>.

     2.    <u>Payment</u>. Commencing on June 30, 2005, Maker shall make payments of principal and interest in the following amounts:

| Date | Principal | Interest | Total Payment Principal + Interest |
|------|-----------|----------|-----------------------------------|
| June 30, 2005 | $ 136,104 | $ 114,666 | $ 250,770 |
| October 18, 2005 | $ 364,659 | $ 135,341 | $ 500,000 |
| November 1, 2005 | $ 484,651 | $ 15,349 | $ 500,000 |
| January 31, 2006 | $ 432,050 | $ 67,950 | $ 500,000 |
| February 28, 2006 | $ 467,818 | $ 32,182 | $ 500,000 |
| March 31, 2006 | $ 642,069 | $ 30,241 | $ 672,310 |
| June 30, 2006 | $ 416,926 | $ 83,074 | $ 500,000 |
| July 31, 2006 | $ 474,153 | $ 25,847 | $ 500,000 |
| September 30, 2006 | $ 452,242 | $ 47,758 | $ 500,000 |
| October 31, 2006 | $ 477,997 | $ 22,003 | $ 500,000 |
| January 31, 2007 | $4,824,592 | $ 60,308 | $4,884,900 |
| TOTALS: | $9,173,261 | $ 634,719 | $9,807,980 |

     Notwithstanding anything in this Note to the contrary, Holder shall have the right, in Holder's sole discretion, to defer any of the principal payments due hereunder, until such later date as Holder shall designate to Maker in writing.

     3.    <u>Prepayment</u>. Maker shall have the right to prepay this Note in whole or in part without premium, upon ninety (90) days prior written notice to Holder. All prepayments shall

3.    Prepayment. Maker shall have the right to prepay this Note in whole or in part without premium, upon ninety (90) days prior written notice to Holder. All prepayments shall be applied first to accrued interest, then to accrued attorney's fees, late charges and other costs of collection, and the balance to principal. If Maker makes prepayments as provided in this paragraph, the interest charges shall be adjusted to reflect the pay-down of the remaining outstanding principal balance due.

4.    Late Payment. If any payment to be made hereunder, whether interest, principal or both, shall not be paid when due, or within fifteen (15) days thereafter, Maker agrees to pay a late charge, in addition to interest and without limiting Holder's rights arising by reason of such default, equal to five percent (5.00%) of such overdue installment. Notwithstanding the foregoing, provided that such payments are received by Holder on or before October 20, 2005, no such late charges shall be assessed, due or payable on the June 30, 2005 or the October 18, 2005 payments in Section 2 above.

5.    Security. This Note is and shall at all times be and remain secured by (a) that certain guaranty of Salander-O'Reilly Galleries, LLC (the "Guarantor") in substantially the same form as Exhibit B attached hereto (the "Guaranty"); and (b) a lien on certain assets of the Maker and the Guarantor in accordance with a security agreement in substantially the same form as Exhibit C attached hereto (the "Security Agreement").

6.    Default; Acceleration. Upon the occurrence of any one or more of the following events of default (each, an "Event of Default"), the entire unpaid principal balance of this Note and all unpaid accrued charges and interest hereunder shall become immediately due and payable at Holder's option and without notice or demand. In addition, at Holder's option and without notice or demand, the occurrence of any such Event of Default shall also constitute a default under or with respect to the Security Agreement and the Guaranty. The Events of Default are as follows:

(a)    the death of Maker;

(b)    the failure by Maker to pay any amount due hereunder, including the entirety at the Maturity Date, within ten (10) days after such amount shall become due and payable;

(c)    a breach or default of any of the representations, warranties or covenants described in the Bill of Sale, the Security Agreement or the Guaranty;

(d)    the institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by Maker to institution of bankruptcy or insolvency proceedings against him/her or the filing by Maker of a petition or answer or consent seeking reorganization, release or other relief under the federal Bankruptcy Code, or any other applicable federal or state law or the consent by him/her to the filing of any such petition or the appointment of a receiver,

liquidator, assignee, trustee or other similar official of Maker, or of any substantial part of his property, or the making by Maker of an assignment for the benefit of creditors; or

(e)    if, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated.

7.    Non-forfeiture of Rights. No delay or omission by Holder in exercising or enforcing any of her power, rights, privileges, remedies, or discretions hereunder shall operate as a waiver thereof on that occasion nor on any other occasion. No waiver of any other default hereunder shall operate as a waiver of any other default hereunder, nor as a continuing waiver.

8.    Costs of Protection and Enforcement. Maker shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and all expenses and disbursements of counsel, in connection with the protection or enforcement of any of Holder's rights against Maker and against any collateral given Holder to secure this Note or any other liabilities of Maker to Holder (whether or not suit or foreclosure is instituted by or against Holder).

9.    Survival; Waiver. Maker and each endorser and guarantor or other parties to this Note, if any, and each of them, severally (a) agree that all rights and remedies of Holder of this Note hereunder shall survive any discharge, moratorium or other relief granted any person primarily or secondarily liable in any proceeding under federal or state law relating to bankruptcy, insolvency or the relief or rehabilitation of debtors, and any consent by Holder of this Note to, or participation by Holder of this Note in the proceeds of, any assignment, trust or mortgage for the benefit of creditors, or any composition or arrangement of debts, may be made without Maker, any endorser, any guarantor or any other party to this Note or any of them being discharged or affected in any way thereby; (b) waive any right to require marshalling or exhaustion or any right or remedy against any person, collateral or other property; and (c) waive presentment, demand, protest and notice of default, non-payment and protest and all demands, notices and suretyship defenses generally.

10.    Binding on Heirs, Successors and Assigns. This Note shall be binding upon Maker and upon his heirs, successors, assigns and representatives, and shall enure to the benefit of Holder, her heirs, successors, assigns and representatives. This Note may not be assigned by Maker without the prior written consent of Holder, which consent may be granted or withheld in Holder's sole discretion.

11.    <u>Governing Law</u>. This Note and the obligations of Maker hereunder shall be governed by and interpreted and determined in accordance with the laws of the Commonwealth of Massachusetts (excluding the laws applicable to conflicts or choice of law). The parties agree that any and all dispute arising out of or in connection with this Note shall be submitted only to any federal or state court situated in the Commonwealth of Massachusetts.

12.    <u>Severability</u>. If any provision of this Note is held to be invalid or unenforceable by a court of competent jurisdiction, the other provisions of this Note shall remain in full force and effect. If the payment of any interest due under this Note would be usurious or would subject the holder to any penalty under applicable law, then the payments due hereunder shall be automatically reduced to the highest rate authorized under applicable law.

13.    <u>Amendment</u>. Neither this Note nor any term hereof may be waived, amended, discharged, modified, changed, or terminated orally, nor shall any waiver of any provision hereof be effective except by an instrument in writing signed by Maker and Holder hereof.

14.    <u>Miscellaneous</u>. As used herein, the word "holder" shall mean the payee or other endorsee of the Note who is in possession of it, or the bearer if the Note is at the time payable to the bearer.

Executed this day and date first above written.

_____          _____
Witness                                            Lawrence Salander

EXHIBIT A

BILL OF SALE

EXHIBIT B

GUARANTY

EXHIBIT C

SECURITY AGREEMENT

1426006.5



# GUARANTY

For good and valuable consideration, the receipt of which is hereby acknowledged, Salander-O'Reilly Galleries, LLC, a New York limited liability company, with a mailing address of 20 East 79th Street, New York, New York 10021 (hereinafter referred to as the "Guarantor"), unconditionally guarantees to Saundra B. Lane, an individual with a mailing address of 300 Holman Street, Lunenburg, MA 01462-1706 (the "Seller"), the prompt payment of and performance of the Maker's obligations pursuant to a Promissory Note made by Lawrence Salander, an individual with a mailing address of c/o Salander-O'Reilly Galleries, LLC, 20 East 79 Street, New York, NY 10021 (the "Buyer"), to the order of the Seller, dated as of April 1, 2005, in the original principal amount of Nine Million One Hundred Seventy-Three Thousand Two Hundred Sixty-One Dollars ($9,173,261) (the "Note"), and to secure the performance of all Obligations, as defined herein, of the Buyer to the Seller.

This Guaranty is made and secures the repayment of all indebtedness of the Buyer to the Seller evidenced by the Note, and any extension, modification, renewal, or substitution of or for the Note including, without limitation, all principal, interest, premiums, and costs of collection (including reasonable attorney's fees) thereunder (all of the foregoing, collectively, the "Obligations").

1.    GUARANTY OF PAYMENT AND PERFORMANCE.  The Guarantor hereby guarantees to the Seller the full and punctual payment when due (whether at maturity, by acceleration or otherwise), and the performance, of all Obligations of the Buyer to the Seller, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired.  This Guaranty is an absolute, unconditional and irrevocable guaranty of the full and punctual payment and performance of the Obligations and not of their collectibility only and is in no way conditioned upon any requirement that the Seller first attempt to collect any of the Obligations from the Buyer or resort to any security or other means of obtaining their payment.  Should the Buyer default in the payment or performance of any of the Obligations beyond the expiration of any applicable grace periods, the obligations of the Guarantor hereunder shall become immediately due and payable to the Seller, without demand or notice of any nature, all of which are expressly waived by the Guarantor.  Payments by the Guarantor hereunder may be required by the Seller on any number of occasions.

2.    GUARANTOR'S AGREEMENT TO PAY.  The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Seller, within ten (10) days of demand, all reasonable out-of-pocket costs and expenses (including court costs and legal expenses) incurred or expended by the Seller in connection with the Obligations, this Guaranty and the enforcement thereof.

3.    UNLIMITED GUARANTY.  The liability of the Guarantor hereunder shall be unlimited.

4.    WAIVERS BY GUARANTOR.  The Guarantor agrees that the Obligations will be paid and performed strictly in accordance with their respective terms regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Seller with respect thereto.  The Guarantor waives presentment, demand, protest,

notice of acceptance, notice of Obligations incurred and, except as otherwise expressly provided herein, all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshalling of assets of the Buyer, and all suretyship defenses generally. Without limiting the generality of the foregoing, the Guarantor agrees to the provisions of any instrument evidencing, securing or otherwise executed in connection with any Obligation and agrees that the obligations of the Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure of the Seller to assert any claim or demand or to enforce any right or remedy against the Buyer; (ii) any extensions or renewals of any Obligation; (iii) any rescissions, waivers, amendments or modifications of any of the terms or provisions of any agreement evidencing, securing or otherwise executed in connection with any Obligation; (iv) the substitution or release of any entity primarily or secondarily liable for any Obligation; (v) the adequacy of any rights the Seller may have against any collateral or other means of obtaining repayment of the Obligations; (vi) the impairment of any collateral securing the Obligations, including without limitation the failure to perfect or preserve any rights the Seller might have in such collateral or the substitution, exchange, surrender, release, loss or destruction of any such collateral; or (vii) any other act or omission which might in any manner or to any extent vary the risk of the Guarantor or otherwise operate as a release or discharge of the Guarantor, all of which may be done without notice to the Guarantor.

5.    REPRESENTATIONS AND WARRANTIES. The Guarantor hereby represents and warrants as follows:

(a)    The execution, delivery and performance of this Guaranty and the transactions contemplated thereby are will not (i) contravene any law, rule or regulation applicable to the Guarantor, (ii) contravene any provision of, or constitute an event of default or event that, but for the requirement that time elapse or notice be given, or both, would constitute an event of default under, any other agreement, instrument, order or undertaking binding on the Guarantor, or (iii) result in or require the imposition of any encumbrance on any of the properties, assets or rights of the Guarantor, except in favor of the Seller.

(b)    This Guaranty is the legal, valid and binding obligation of the Guarantor, enforceable in accordance with its respective terms except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally, and except as equitable remedies are subject to the discretion of the court before which any proceeding therefor may be brought.

(c)    The execution, delivery and performance of this Guaranty and the transactions contemplated herein do not require any approval or consent of, or filing or registration with, any governmental or other agency or authority, or any other person.

(d)    There are no conditions precedent to the effectiveness of this Guaranty that have not been satisfied or waived.

(e)    The Guarantor is solvent.

-2-

6.     UNENFORCEABILITY OF OBLIGATIONS AGAINST BUYER. If for any reason the Buyer is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Buyer by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations. In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Buyer, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligation shall be immediately due and payable by the Guarantor.

7.     WAIVER OF SUBROGATION. Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Buyer arising as a result of payment by the Guarantor hereunder, by way of subrogation or otherwise, and will not prove any claim in competition with the Seller or any of its affiliates that extends credit to the Buyer in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Buyer in respect of any liability of the Guarantor to the Buyer; the Guarantor waives any benefit of and any right to participate in any collateral which may be held by the Seller or any such affiliate; and notwithstanding any other provision to the contrary contained herein, the Guarantor hereby irrevocably waives until the payment and performance in full of all Obligations any and all rights it may have at any time (whether arising directly or indirectly, by operation of law or by contract) to assert any claim against the Buyer on account of payments made under this Guaranty, including, without limitation, any and all rights of or claim for subrogation, contribution, reimbursement, exoneration and indemnity.

8.     FURTHER ASSURANCES. The Guarantor agrees that it will, from time to time at the request of the Seller, provide to the Seller its most recent tax returns and balance sheets, and such other information relating to the business and affairs of the Guarantor as the Seller may reasonably request. The Guarantor also agrees, upon demand after any change in the condition or affairs (financial or otherwise) of the Guarantor deemed by the Seller to be adverse and material, to secure the payment and performance of its obligations hereunder by delivering, assigning or transferring to the Seller or granting the Seller a security interest in additional collateral of a value and character satisfactory to the Seller, and authorizes the Seller to file any financing statement deemed by the Seller to be necessary or desirable to perfect any security interest granted by the Guarantor to the Seller, and as agent for the Guarantor, to sign the name of the Guarantor thereto. The Guarantor also agrees to do all such things and execute all such documents, including financing statements, as the Seller may consider necessary or desirable to give full effect to this Guaranty and to perfect and preserve the rights and powers of the Seller hereunder.

9.     SUCCESSORS AND ASSIGNS. This Guaranty shall be binding upon the Guarantor, its successors and assigns, and shall inure to the benefit of and be enforceable by the Seller and her heirs, successors, transferees and assigns. Without limiting the generality of the foregoing sentence, the Seller may assign or otherwise transfer any agreement or any note held by it evidencing, securing or otherwise executed in connection with the Obligations, or sell participations in any interest therein, to any other person or entity, and such other person or

entity shall thereupon become vested, to the extent set forth in the agreement evidencing such assignment, transfer or participation, with all the rights in respect thereof granted to the Seller herein.

10. AMENDMENTS AND WAIVERS. No amendment or waiver of any provision of this Guaranty nor consent to any departure by the Guarantor therefrom shall be effective unless the same shall be in writing and signed by the Seller. No failure on the part of the Seller to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

11. NOTICES. All notices and other communications called for hereunder shall be made in writing and, unless otherwise specifically provided herein, shall be deemed to have been duly made or given when delivered by hand, or when sent by electronic facsimile transmission or by telex, answerback received, or on the first business day after delivery to any nationally recognized overnight commercial delivery service, freight pre-paid, or three business days after being sent by certified or registered mail, return receipt requested, postage pre-paid, addressed to the addresses provided herein, or at such other address as either party may designate in writing.

12. GOVERNING LAW; CONSENT TO JURISDICTION. This Guaranty is intended to take effect as a sealed instrument and shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts (without regard to conflicts of laws rules). The Guarantor agrees that any suit for the enforcement of this Guaranty may be brought in the courts of the Commonwealth of Massachusetts or any Federal Court sitting therein and consents to the non-exclusive jurisdiction of such court and to service of process in any such suit being made upon the Guarantor by mail at the address specified in Section 11 hereof. The Guarantor hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit was brought in an inconvenient court.

13. MISCELLANEOUS. This Guaranty constitutes the entire agreement of the Guarantor with respect to the matters set forth herein. The rights and remedies herein provided are cumulative and not exclusive of any remedies provided by law or any other agreement, and this Guaranty shall be in addition to any other guaranty of the Obligations. The invalidity or unenforceability of any one or more sections of this Guaranty shall not affect the validity or enforceability of its remaining provisions. Captions are for the ease of reference only and shall not affect the meaning of the relevant provisions. The meanings of all defined terms used in this Guaranty shall be equally applicable to the singular and plural forms of the terms defined.

14. JURY WAIVER. THE SELLER (BY ITS ACCEPTANCE HEREOF) AND THE GUARANTOR AGREE THAT NEITHER OF THEM, INCLUDING ANY ASSIGNEE OR SUCCESSOR SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON, OR ARISING OUT OF, THIS GUARANTY, ANY RELATED INSTRUMENTS, ANY COLLATERAL OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM. NEITHER THE SELLER NOR THE GUARANTOR SHALL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS

-4-

PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE SELLER AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE SELLER NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

IN WITNESS WHEREOF, the Guarantor has executed and delivered this Guaranty, or caused this Guaranty to be executed and delivered by its duly authorized officer, as of the date appearing on page one.

GUARANTOR:
Salander-O'Reilly Galleries, LLC

By:_____
Name: LAWRENCE B. SALANDER
Title: PRESIDENT

1453907.3



## SECURITY AGREEMENT

This Security Agreement (this "Agreement") is made and entered into as of the 1st day of April, 2005, by and among Lawrence Salander, an individual with a mailing address of c/o Salander-O'Reilly Galleries, LLC, 20 East 79 Street, New York, NY 10021 (the "Buyer"), Salander-O'Reilly Galleries, LLC, a New York limited liability company with a mailing address of 20 East 79th Street, New York, New York 10021 (the "Guarantor") and Saundra B. Lane, an individual with a mailing address of 300 Holman Street, Lunenburg, MA 01462-1706 (the "Secured Party").

## RECITALS

This Agreement is premised on the following understandings of the parties:

A.      The Buyer purchased from the Secured Party that certain painting by Charles Sheeler entitled "*Newhaven*" (the "Painting") pursuant to that certain Bill of Sale dated as of even date (the "Bill of Sale");

B.      Incident to a Promissory Note (the "Note") dated as of even date by and between the Buyer and the Secured Party, the Secured Party has extended credit to the Buyer in the original principal amount of Nine Million One Hundred Seventy-Three Thousand Two Hundred Sixty-One Dollars ($9,173,261), all as set forth in the Note;

C.      The Note is secured by, among other things, the guaranty of the Guarantor pursuant to that certain Guaranty of even date herewith; and

D.      The parties agree that in order to secure the Guarantor's obligations under the Guaranty and the Buyer's obligations under the Note, the Buyer shall grant a security interest in the Painting and the Guarantor shall grant a security interests in certain other works of art owned by the Guarantor and described on Exhibit A attached hereto (collectively, the "Collateral"), in favor of the Secured Party as herein provided.

**NOW, THEREFORE,** in consideration of the willingness of the Secured Party to extend credit to the Buyer pursuant to the Note, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Definitions. All capitalized terms used herein without definitions shall have the respective meanings provided therefor in the Note. The term "State", as used herein, means the Commonwealth of Massachusetts. All terms defined in the Uniform Commercial Code of the State and used herein shall have the same definitions herein as specified therein. However, if a term is defined in Article 9 of the Uniform Commercial Code of the State differently than in another Article of the Uniform Commercial Code of the State, the term has the meaning specified in Article 9.

The term "Lien" shall mean, with respect to any property, any security interest, mortgage, pledge, lien, claim, charge or other encumbrance in, of, or on such property or the income therefrom, including, without limitation, the interest of a vendor or lessor under a conditional sale agreement, capital lease or other title retention agreement, or any agreement to provide any of the foregoing, and

the filing of any financing statement or similar instrument under the UCC or comparable law of any jurisdiction.

The term "Obligations", as used herein, means all of the indebtedness, obligations and liabilities of the Buyer and the Guarantor to the Secured Party, individually or collectively, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising under the Note, the Guaranty or this Security Agreement, including without limitation:

(a)    The Buyer's payment and performance of the outstanding Principal, interest and other applicable charges in accordance with the Note to the Secured Party;

(b)    The Guarantor's payment and performance of all Obligations due to the Secured Party under the Guaranty; and

(c)    The payment of all other sums with interest and charges thereon advanced in accordance herewith to protect the validity, security and priority of this Security Agreement.

2.    Grant of Security Interest. The Buyer and the Guarantor hereby grants to the Secured Party, to secure the payment and performance in full of all of the Obligations, a security interest in the Collateral, and all proceeds and products thereof.

3.    General Representations and Warranties. The Buyer and the Guarantor represents and warrants to the Secured Party that (a) the Collateral is duly and validly assigned and pledged to the Secured Parties in accordance with law; (b) the Buyer and the Guarantor each have good title to the Collateral owned by them, free and clear of all Liens of every nature whatsoever; (c) neither the Buyer nor the Guarantor will sell, convey or otherwise dispose of any of the Collateral, nor will the Buyer or the Guarantor create, incur or permit to exist any Lien whatsoever with respect to the Collateral or the proceeds or products thereof, other than liens and security interests created hereby; (d) this Security Agreement has been duly executed and delivered by each of the Buyer and the Guarantor and is the legal, valid, and binding obligation of each, enforceable against each of them in accordance with the terms hereof; and (e) upon the filing of UCC-1 financing statements in the appropriate filing offices, the Secured Party has (or in the case of after-acquired Collateral, at the time the Buyer or the Guarantor acquires rights therein, will have) a perfected security interest in the Collateral to the extent that a security interest in the Collateral can be perfected by such filing.

4.    Covenants Relating to Collateral. Each of the Buyer and the Guarantor hereby agrees (a) to perform all acts that may be reasonably necessary to maintain, preserve, protect and perfect the Collateral, the Lien granted to the Secured Party therein and the perfection and priority of such Lien; (b) to pay promptly when due all taxes and other governmental charges and all Liens and all other charges now or hereafter imposed upon or affecting any Collateral; (c) to procure, execute and deliver from time to time any endorsements, assignments, financing statements and other writings reasonably deemed necessary or appropriate by the Secured Party to perfect, maintain and protect their Lien hereunder; (d) to appear in and defend any action or proceeding which may materially and adversely affect its title to or the Secured Party's interest in the Collateral; (e) not to surrender or lose possession of (other than to the Secured Party), sell, encumber, or otherwise dispose of or

transfer any Collateral or right or interest therein, and to keep the Collateral free of all Liens, and (f) to permit the Secured Party and her representatives the right, at any time during normal business hours, upon reasonable prior notice, to visit the properties of the Buyer and the Guarantor for the purposes of inspection of the Collateral.

5.    Rights and Remedies.  If an Event of Default shall have occurred and be continuing, the Secured Party, without any other notice to or demand upon the Buyer or the Guarantor, shall have in any jurisdiction in which enforcement hereof is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of the State and any additional rights and remedies as may be provided to a secured party in any jurisdiction in which Collateral is located, including, without limitation, the right to take possession of the Collateral, and for that purpose the Secured Party may, so far as the Buyer or the Guarantor can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom.  The Secured Party shall give to the Buyer and the Guarantor at least fifteen (15) Business Days prior written notice of the time and place of any public sale of Collateral or of the time after which any private sale or any other intended disposition is to be made.  Each of the Buyer and the Guarantor hereby acknowledges that fifteen (15) Business Days prior written notice of such sale or sales shall be reasonable notice.  In addition, each of the Buyer and the Guarantor waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of the Secured Party's rights and remedies hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights and remedies with respect thereto.

6.    Miscellaneous.  (a) The powers conferred on the Secured Party hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers.  Except for the safe custody of any Collateral in its possession and the accounting for monies actually received by it hereunder, the Secured Party shall not have any duty as to any Collateral or as to the taking of any necessary steps to preserve any right of it or of the Buyer or the Guarantor against other parties pertaining to any Collateral.

(b)    No provision hereof shall be amended except by a writing signed by the Secured Party, the Guarantor and the Buyer.

(c)    Any provision of this Security Agreement which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

(d)    This Security Agreement shall be binding upon and shall inure to the benefit of the heirs, assigns and successors of the Secured Party, the Buyer and the Guarantor.

(e)    No delay, failure to enforce, or single or partial exercise on the part of the Secured Party in connection with any of its rights hereunder shall constitute an estoppel or waiver thereof, or preclude other or further exercises or enforcement thereof and no waiver of any default hereunder shall be a waiver of any subsequent default.

(f)    This Security Agreement and the rights and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts (excluding the laws applicable to conflicts or choice of law).

(g)    **EACH OF THE BUYER AND THE GUARANTOR WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS OR OBLIGATIONS HEREUNDER OR THE PERFORMANCE OR ENFORCEMENT OF ANY SUCH RIGHTS OR OBLIGATIONS.**

(h)    Each of the Buyer and the Guarantor hereby expressly authorizes the Secured Party to file such financing statements, amendments, in lieu statements or other UCC public filings now and in the future, so long as the same are consistent with the provisions of this Agreement.

IN WITNESS WHEREOF, acting by and through its duly authorized agent the parties hereto have executed this Security Agreement on the day and year first hereinbefore stated.

**BUYER:**

Lawrence Salander

**GUARANTOR:**
Salander-O'Reilly Galleries, LLC

By:
Name: Lawrence Salander
Title: President

**SECURED PARTY:**

Saundra B. Lane

EXHIBIT A

DESCRIPTION OF COLLATERAL

The following works of art are hereby pledged as collateral for the Buyer's obligations under the Note and the Guarantor's Obligations under the Guaranty:

1.    Charles Sheeler, *Newhaven*, 1932, oil on canvas, 36 by 29 inches.

2.    Michelangelo Buonarroti, *River God*, bronze, cast of the artist in 1541.  Height:  7 inches.

3.    Benvenuto Cellini, *Motto Study*, brown ink on paper, 16 by 12 inches.

4.    Albert Pinkham Ryder, *Windmill*, oil on canvas, 8 ½ by 11 ½ inches.

5.    James Abbott McNeill Whistler, pair of oil paintings on panel, *Seascape* and *Dieppe*, 1888. Signed with butterfly in the lower right, label verso in the artist's hand, each panel 10 by 16 inches.

1453870.3

## AMENDMENT NO. 1
## TO
## SECURITY AGREEMENT

This Amendment No. 1 to Security Agreement (this "Amendment") is made as of the 28th day of February, 2006 (the "Effective Date"), by and among Lawrence Salander, an individual with a mailing address of c/o Salander-O'Reilly Galleries, LLC, 20 East 79 Street, New York, NY 10021 (the "Buyer"), Salander-O'Reilly Galleries, LLC, a New York limited liability company with a mailing address of 20 East 79th Street, New York, New York 10021 (the "Guarantor") and Saundra B. Lane, an individual with a mailing address of 300 Holman Street, Lunenburg, MA 01462-1706 (the "Secured Party").

WHEREAS, Buyer, Guarantor and Secured Party are parties to that certain Security Agreement dated as of April 1, 2005 (the "Security Agreement"), under which Buyer and Guarantor have granted a security interest to Secured Party in the Collateral (as defined therein) listed on Schedule A to the Security Agreement;

WHEREAS, Buyer and Guarantor would like to sell certain pieces of the Collateral as further described on Schedule A hereto (the "Terminated Collateral") and have submitted a request to Secured Party to substitute certain works of art listed on Schedule B hereto (the "Substitute Collateral) as the Collateral encumbered by the security interest granted to Secured Party under the terms of the Security Agreement; and

WHEREAS, subject to the terms and conditions of this Amendment, Secured Party has agreed to substitute the Substitute Collateral in place of the Terminated Collateral

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Exhibit A of the Security Agreement is hereby amended by deleting the Terminated Collateral described on Exhibit A hereto and replacing such items with the Substitute Collateral described on Exhibit B hereto.

2.      Each of Buyer and Guarantor hereby expressly authorizes Secured Party to file such financing statements, amendments, terminations, in lieu statements or other UCC public filings now and in the future, so long as the same are consistent with the provisions of this Amendment.

3.      This Amendment may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

4.      All capitalized terms not defined herein shall have the same meaning prescribed to them in the Security Agreement. Except as expressly modified by this Amendment, the Security Agreement shall remain in full force and effect and is hereby ratified and confirmed by the parties hereto.

(The Remainder Of This Page Has Intentionally Been Left Blank.)

IN WITNESS WHEREOF, acting by and through its duly authorized agent the parties hereto have executed this Security Agreement on the day and year first hereinbefore stated.

**BUYER:**

Lawrence Salander

**GUARANTOR:**
Salander-O'Reilly Galleries, LLC
By:
Name: Erin K. Fitzpatrick
Title: Senior Vice President

**SECURED PARTY:**

Saundra B. Lane

EXHIBIT A

TERMINATED COLLATERAL

1..   Michelangelo Buonarroti, *River God*, bronze, cast of the artist in 1541.  Height:  7 inches.

2.    Benvenuto Cellini, *Motto Study*, brown ink on paper, 16 by 12 inches.

EXHIBIT B

SUBSTITUTE COLLATERAL

1. Théodore Géricault, *The Flemish Farrier* (also known as Horse Stable and Keeper), 1821, oil on paper laid on canvas, 14 ¾ by 18 inches

Provenance: Private Collection, Virginia.

Note: A lithograph of this work but as a mirror image was published by Géricault in 1821. A work with similar composition and dimensions may be found in Germain Bazin, *Géricault*, Paris, 1997, tome VII, #2411, p. 172.

2. Albert Pinkham Ryder, *Toilers of the Sea*, 1895-1900, oil on leather, 17 ½ x 22 inches

Provenance: Acquired from the artist, c. 1910; By descent to private collection, Long Island, NY.

Exhibited: Museum of Modern Art

3. Albert Pinkham Ryder, *Witch's Mountain*, oil on canvas, 20 1/8 x 30 inches

Provenance: The Artist; Private Collection by descent. Private Collection, NY.

1509143.2



# SALANDER-O'REILLY GALLERIES, LLC

22 EAST 71ST STREET    NEW YORK, NY 10021    212-879-6606    FAX
212-400-4488

July 18, 2006

Mrs. Sandra Lane
c/o Mr. Stephan Gould

Dear Sandra,

I am terribly sorry that the July 1 payment due is late. At the beginning of June I had
what was to be a routine surgery to replace my right hip, which was arthritic to the point
of continuous pain and difficulty walking. As it turned out I picked up a staph infection
in the hospital and I have been very ill for the past six weeks. Luckily for me the
infection was discovered before it became systemic and they were able to save my life by
prescribing intravenous antibiotics that get injected three times a day. It is really a drag
but as bad as it is I have to be thankful for it.

I tell you this as the reason for the delay. I will attend to this as soon as I possibly can.
Please rest assured that I think about you often and your payment will be the very first
thing I attend to when I am able. Surely it will be a matter of two or three weeks at most.
I will add the appropriate interest to the balance due. I hope you are well and having a
good summer.

Best,

Larry Salander

Stephen Gould - From Lawrence Salander                                              Page 1

**From:**     Andrew Kelly <akelly@salander.com>
**To:**       <sgould@nutter.com>
**Date:**     8/1/2006 11:59:36 AM
**Subject:**  From Lawrence Salander

Dear Steven,

Mrs Lane and you have been very patient with all this. I appreciate it more than I can tell you.

I have had a setback with my health as it relates to complications from surgery and have been incapacitated. I have not been in the gallery for some time and expect to be back to work beginning Tuesday of next week. I assure you that I shall pay the $630,925.50 by the end of next week. Meanwhile I am very sorry for any inconvenience and I send my best to you and Mrs Lane.

Best regards,

SALANDER-O'REILLY GALLERIES

Lawrence Salander