Flemming Zulack Williamson Zauderer LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Dean R. Nicyper, Esq. (DRN-7757)

Attorneys for Plaintiff Earl Davis

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
EARL DAVIS,

                              Plaintiff,

      -against-

SALANDER O'REILLY GALLERIES LLC
f/k/a SALANDER O'REILLY GALLERIES INC.,
and LAWRENCE B. SALANDER

                              Defendants.
------------------------------------------------------------------ X

Index No. 07 Civ. 4165 (SHS) (DF)

**DECLARATION OF
DEAN R. NICYPER
IN SUPPORT OF MOTION
FOR CONTEMPT AND A
PRELIMINARY INJUNCTION**

DEAN R. NICYPER declares under the penalties of perjury as follows:

1.    I am admitted to practice law in the State of New York and am a member of Flemming Zulack Williamson Zauderer LLP, attorneys for plaintiff, Earl Davis ("Davis" or "Plaintiff"), in this action. I am fully familiar with the facts set forth in this declaration in support of the Plaintiff's Motion for Contempt and a Preliminary Injunction against Defendants Salander O'Reilly Galleries, LLC (f/k/a Salander O'Reilly Galleries, Inc.) ("SOR" or the "Gallery") and Lawrence B. Salander ("Salander") (SOR and Salander are referred to herein collectively as "Defendants".) A copy of the Complaint is attached hereto as Ex. 1.

2.    We previously filed an Order to Show Cause in this action, signed by the Hon. Richard M. Berman on June 29, 2007, seeking a preliminary injunction and expedited discovery. (A copy of the Order to Show Cause is attached hereto as Ex. 2.)

297081

3.  To address the issues in the Order to Show Cause, the parties entered into a Stipulation and Order in which the parties stipulated to nearly all of the relief sought by the Order to Show Cause. The Stipulation and Order was so-ordered by this Court on July 9, 2007. (A copy of the so-ordered Stipulation and Order (the "July 2007 Order") is attached hereto as Ex. 3.) The July 2007 Order directed Defendants, *inter alia*, to (i) retrieve all unsold Works that Defendants consigned, pledged, loaned or transferred, and to deliver all unsold Works to Plaintiff; (ii) produce documents relating to any Works that Defendants pledged as collateral; and (iii) to segregate from all of Defendants' other moneys, and deliver to Plaintiff, all installments that Defendants receive as one or more payments for Works.

4.  The one aspect of relief that the Stipulation and Order did not include was the provision requiring Defendants to turn Plaintiff's trust funds over to Plaintiff. We tentatively agreed with Defendants' counsel not to include this provision on the representation, as expressly set forth in the July 2007 Order, that the parties would have until August 10, 2007, to negotiate in good faith to resolve the claims in this action. The parties have not resolved the claims. As set forth more fully below and in the Davis Declaration and the memorandum of law accompanying this motion, the actions of Defendants and Defendants' financial circumstances make it essential that Plaintiff obtain an injunction requiring Defendants to turn over to Plaintiff his trust funds. Without an injunction, it appears highly likely that Plaintiff will be precluded from obtaining all of those trust funds, and possibly will be precluded from obtaining any of them.

5.  Inventory lists Defendants provided to Plaintiff earlier this year all show that Defendants sold many of the Stuart Davis works of art which Plaintiff had delivered to Defendants (the "Works") years ago for millions of dollars in the aggregate, although

Defendants never paid Plaintiff any of the proceeds from those sales. During that same time, in contrast, Defendants paid millions of dollars to others, as is demonstrated in part in pleadings filed against Defendants in the following other actions:

      a.     To settle a claim by Compagnie de Beaux Arts Ltd. ("CBA"), the Gallery paid CBA $475,000 in the period November 30, 2005 to January 31, 2006. The Gallery owed an additional $635,000. The lawsuit by Compagnie against the Gallery, filed February 2, 2006, has since been settled and therefore all or some of that $635,000 amount appears to have been paid since January 2006. (Complaint and attachments in <u>Compagnie de Beaux Arts, Ltd v. Salander O'Reilly Galleries LLC</u>, 06/600338 (Sup. Ct. N.Y. Co.), a copy of which is attached hereto as Ex. 4.)

      b.     On March 16, 2005, the Gallery purchased an Edouard Manet painting and a sculpture from Renaud-Giquello & Associes for EUR 489,149.58, and paid EUR 146,745 on that date. A lawsuit Renaud-Giquello filed against the Gallery on February 28, 2006 for the remaining amount has now been settled, and therefore it appears that all or some of the remaining EUR 342,404.58 has been paid since the complaint was filed. (Complaint in <u>Renaud-Giquello & Associes v. Salander O'Reilly Galleries LLC</u>, 06/600661 (Sup. Ct. N.Y. Co.), a copy of which is attached hereto as Ex. 5.)

      c.     The Gallery purchased a sculpture from Dougal Arts Limited on March 1, 2004, for EUR 850,000, and Defendants paid EUR 400,000 to Dougal on March 9, 2004. A lawsuit Dougal Arts filed against the Gallery for nonpayment of the remainder has now been settled and therefore it appears that the Gallery paid all or some of the remaining EUR 450,000 to Dougal since the filing of a pre-trial

297081

3

memorandum in the action on November 7, 2006. (Pre-trial memorandum in <u>Dougal Arts Limited v. Salander O'Reilly Galleries, LLC</u>, 05 Civ. 5299 (WHP) (SDNY), a copy of which is attached hereto as Ex. 6.)

       d.     The Gallery guaranteed a purchase by Salander of a Charles Sheeler painting, titled *New Haven,* on April 1, 2005, from Saundra Lane for $9,173,261. One or both of the Defendants paid Saundra Lane $2,850,770 between April 1, 2005 and April 19, 2006. A lawsuit by Ms. Lane against the Gallery and Salander for the remainder of the money (the "<u>Lane v. Salander</u> Action") apparently is ongoing. (Verified Complaint and attachments in <u>Saundra B. Lane v. Lawrence Salander and Salander O'Reilly Galleries, LLC</u>, 06-40178 (D. Mass.), a copy of which is attached hereto as Ex. 7.)

       e.     Defendant Salander paid a contractor $374,388.05 for renovations to his New York apartment between June 2004 and June 19, 2006, the date a complaint was filed against Salander by the contractor. (Complaint in <u>Timothy Landing, Inc. et ano v. Lawrence Salander, et ano</u>, 06/602179 (Sup. Ct. N.Y. Co.), a copy of which is attached hereto as Ex. 8.)

       6.     In the <u>Lane v. Salander</u> Action, counsel for the Gallery and Lawrence Salander represented to the court that they have "a liquidity crisis," and their counsel expressed concern that their "house of cards will collapse." <u>See</u> Transcript of April 13, 2007 Proceedings, in <u>Lane v. Salander</u>, CA No. 06-40178-FDS, at pages 5 and 7 (attached hereto as Ex. 9).

       7.     A search we conducted in the spring of this year of Uniform Commercial Code ("UCC") financing statements revealed that, in 2006, Defendants pledged

297081                                          4

at least fourteen of Plaintiff's Works as collateral to secure Defendants' own debt obligations. (See chart of the fourteen works and copies of the UCC #1 Financing Statements, attached hereto as Ex. 10.) We recently updated that search and found an additional UCC financing statement revealing that Defendants recently pledged another of the Works belonging to Plaintiff, an oil painting titled *Punchcard Flutter*, as collateral for even further of Defendants' own debt obligations. (A copy of that UCC #1 Financing Statement is attached hereto as Ex. 11.)

        8.      Pursuant to the July 2007 Order, Defendants produced approximately 1000 pages of documents to Plaintiff on July 26, 2007 (one day after the July 2007 Order required their production). In violation of the July 2007 Order, Defendants produced no documents whatsoever explaining, or even concerning, the security interests in Plaintiff's Works that Defendants had pledged to their own creditors, as is reflected at least in part in the UCC #1s that certain creditors filed as described in the preceding paragraph 7.

        9.      In addition, the July 2007 Order expressly required Defendants to "retrieve all Works that have not yet been sold from those persons or entities to which Defendants consigned, pledged, loaned or transferred such unsold Works, and deliver such unsold Works to Plaintiff." (July 2007 Order, Ex. 3 hereto) at ¶ 2.) After Defendants produced documents, we asked Defendants' counsel whether there were any unsold works. Defendants' counsel said his client confirmed that there were no unsold Works still outstanding. Defendants' representation was false.

       10.     Specifically, after the Plaintiff learned from SOR personnel that SOR had not contacted other galleries and dealers to retrieve Plaintiffs' Works, as Plaintiff had been demanding for more than one year, we sent letters to several dealers and galleries notifying

297081

5

them that Plaintiff no longer had a business relationship with SOR and that any of Plaintiff's property therefore should be returned to Plaintiff. After the July 2007 Order was issued, one gallery, known as Babcock Galleries, contacted us stating that it still had seven Stuart Davis works of art that it had received on consignment from SOR. All seven of these works were included in the 116 Works that Defendants failed to return to Plaintiff. Babcock Galleries returned those seven works to Plaintiff on July 24, 2007, and reported that no one from SOR had contacted them to see if they still had any Works on consignment. (Attached hereto as Ex. 12 is a copy of a receipt from Babcock Galleries, dated July 24, 2007, identifying the seven Works that Babcock Galleries returned to Plaintiff.) Five of these seven Works Defendants previously reported (falsely) to Plaintiff as having been sold, and Defendants falsely represented purported sale prices for those five Works. As explained below, we have recalculated the sale prices Defendants received by subtracting Defendants' reported sale prices for those five Works.

11. In further violation of the July 2007 Order, Defendants failed to deliver to Plaintiff any installment payments. The July 2007 Order requires Defendants to deliver all such installment payments to Plaintiff upon Defendants' receipt of them beginning on the date of the Order. Defendants' counsel represented to me that there are no installment payments owed in connection with Defendants' previous sales of any of the Works. This assertion, however, is belied by the documents Defendants produced, which reveal that Defendants entered into a installment payment plan for the 4-Paintings Sale, with 48 equal payments due and payable monthly commencing on July 2, 2006. (A copy of a January 2, 2006 invoice on SOR letterhead concerning the 4-Painting Sale is attached as Ex. 13.) The August 2, 2007 payment date has come and gone, but Plaintiff has not received that installment payment.

12. We do not know which of the other unaccounted-for Works are still unsold or out on consignment. Nor do we know for which of the other sales installment payments are still owing.

13. Plaintiff already has suffered substantial harm as a result of Defendants' failure to comply with the July 2007 Order. Plaintiff withdrew his original Order to Show Cause on the understanding that Defendants would comply with the Stipulation and Order, as so ordered by the Court, while the parties attempted to resolve the claims in this action. Instead, Defendants signed the order and then went about their lives as if it had no effect. The result is that Plaintiff is in essentially the same place in which he started when he filed this lawsuit, except that now, he may forever be precluded from obtaining the trust funds that rightfully belong to him.

14. Plaintiff will suffer substantial, immediate and irreparable injury and damages if Defendants are not found in contempt and compelled to comply with the July 2007 Order (i) enjoining them from continuing to sell or encumber the Works and mandating that they produce all documents relating to Works they pledged as collateral; (ii) mandating that they retrieve and return to Plaintiff all unsold Works; and (iii) requiring them to segregate in a separate bank account and deliver to Plaintiff all installment payments for Works Defendants previously sold.

15. Because Defendants' violations of the July 2007 Order have deprived Plaintiff of critical information needed to locate his Works and trust funds, it is essential that Defendants' three principal executives appear for immediate depositions. The three SOR executives who had the most responsibility concerning handling of Plaintiff's Works are Lawrence Salander, Leigh Morse and Andrew Kelly. We therefore respectfully request that

this Court order each of them to appear for deposition at Flemming Zulack Williamson Zauderer LLP, respectively, on September 25, 26 and 27, 2007.

16. Plaintiff will suffer substantial, immediate and irreparable injury and damages if Defendants also are not required to turn over all of Plaintiff's trust funds, consisting of the proceeds from the sales of any and all of the Works previously sold by Defendants. Based on the records we received from Defendants,[1] the trust funds Defendants reported to have received (which does not include any amounts for the 38 Works for which Defendants have not reported any sale prices) totals $9,382,500.00. Therefore, Defendants should be compelled to turn over to Plaintiff a minimum of $9,382,500 in trust funds.

17. As set forth in further detail in the accompanying Memorandum of Law, Plaintiff is substantially likely to prevail on his claims against Defendants because, under Article 12 of the New York Arts and Cultural Affairs Law, Defendants hold the Works and any proceeds from the sale of such Works in trust for the benefit of Plaintiff, and Defendants have no rights to those Works or sales proceeds. Plaintiff has no adequate remedy at law and the harm that will be sustained by Plaintiff if the requested injunction is denied far outweighs the prejudice to Defendants if the requested injunction is granted.

18. Accordingly, we respectfully request that this Court (A) compel Defendants to comply with all provision of the July 2007 Order; (B) issue a preliminary injunction directing Defendants to turn over to Plaintiff all of Plaintiff's trust fund proceeds in an amount no less than $9,382,500.00, and (C) order Defendants Lawrence Salander, and SOR senior executives, Leigh Morse and Andrew Kelly, each to appear for his or her

---

[1] These new calculations are based on the Inventory Lists Defendants produced, supplemented by invoices Defendants produced with their July 26, 2007 document production, from which we then subtracted amounts Defendants had falsely reported as sale prices for 5 of the 7 Works that Babcock Galleries returned to Plaintiff on July 24, 2007.

deposition, to be taken at the offices of Flemming Zulack Williamson Zauderer LLP, respectively on September 25, 26, and 27, 2007.

19. No prior request has been made for the relief sought herein.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 20, 2007
New York, New York

_____
DEAN R. NICYPER