UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EARL DAVIS,

                      Plaintiff,

      -against-

SALANDER-O'REILLY GALLERIES LLC
f/k/a SALANDER-O'REILLY GALLERIES INC.,
and LAWRENCE B. SALANDER

                      Defendants.
------------------------------------------------------------x

**Electronically Filed**

07-CV-4165 (SHS) (DF)

**DECLARATION OF
ANTONETTE FAVUZZA**

      I, ANTONETTE FAVUZZA hereby declare:

      1.    I am employed by Salander O'Reilly Galleries, LLC ("Salander O'Reilly") as its Chief Financial Officer. I am fully familiar with the facts set forth in this declaration in support of Defendants' opposition to Plaintiff Earl Davis' ("Plaintiff") motion for contempt and for a preliminary injunction.

      2.    On July 9, 2007, a stipulation and order ("the Order") was agreed to by the parties and entered in this action, which directed Salander O' Reilly to make certain efforts with respect to the works contained in the Stuart Davis collection. (Attached hereto as Exhibit A is a true and correct copy of the July 9, 2007 Stipulation and Order).

      3.    Under the Order, Salander O'Reilly is to: 1) refrain from selling, lending, leasing, consigning, encumbering, assigning or pledging as collateral, or transferring/attempting to transfer to any person or entity, other than Earl Davis, any Stuart Davis works; 2) to retrieve all Stuart Davis works from all parties to which the works have been consigned, pledged or loaned; 3) deliver any retrieved works to Earl Davis; 4) segregate, and deliver to Earl Davis, any installment payments received after the date of the Order; and 5) to have produced several

categories of documents, as set forth in the Order, by July 25, 2007. The Order contains no timeframe in which Salander O'Reilly is to complete tasks 1-4.

4. On July 10, 2007, I met with attorneys from Winston & Strawn LLP, counsel for Defendants in this action. The purpose of this meeting was to discuss the terms of the Order. On the day of this meeting, Lawrence Salander assigned to me the task of ensuring that Salander O'Reilly made all efforts to comply with the provisions of the Order. Since July 10, 2007, I have worked with counsel to ensure that Salander O'Reilly is in full compliance.

**Plaintiff's Motion**

5. On August 20, 2007, I learned from counsel that Plaintiff brought this motion. I was shocked to hear Plaintiff's claim that we were in violation of the Order. It was, and has been, my understanding that, excluding the document production, compliance with the Order is ongoing and the Order sets forth no timeline under which Salander O'Reilly is required to complete any of its obligations.[1]

6. Since my July 10, 2007 meeting with counsel, I have taken all steps necessary to ensure that Salander O'Reilly fully comply with the Order. The steps that I have taken are set forth below.

**The Alienation Of Stuart Davis Works**

7. Because the vast majority of Stuart Davis works in Salander O'Reilly's possession were returned prior to entry of the Order, Salander O'Reilly has not sold, leased, consigned, assigned, or pledged as collateral any Stuart Davis works since the entry of the Order.

---

[1] I am also aware, through counsel, that settlement negotiations were to be completed by August 10, 2007. I was not directly involved in that aspect of complying with the Order.

2

Any Stuart Davis works that were located following the entry of the Order have been returned to Mr. Davis.

8. After entry of the Order, and as a result of Salander O'Reilly's efforts to date, a sketch entitled *Cigar and Hand Held Before View Looking Northwest from Approximately Third Avenue and East 14th Street* was returned to the Mr. Nicyper on August 28, 2007. (Attached hereto as Exhibit B is a true and correct copy of a signed release dated August 28, 2007).[2]

**Salander O'Reilly's Efforts To Date In Retrieving The Stuart Davis Works**

9. One of the discussion points at my July 10, 2007 meeting with counsel was the steps that should be taken by Salander O'Reilly to retrieve works that may have been consigned, pledged, loaned or transferred to third parties. It was decided that a Salander O'Reilly employee should be appointed to undertake the task of contacting all third parties that could possibly be in possession of a Stuart Davis work.

10. Shortly thereafter, I assigned this task to Diane Buckley, who was an employee of Salander O'Reilly at that time.

11. It is my understanding, from regular conversations that I had with Ms. Buckley, that she worked on this assignment daily from the time it was assigned until her resignation.[3]

12. Prior to her sudden resignation, Ms. Buckley made phone calls to both galleries and individuals that we believed may be in possession of Stuart Davis works, in order to assess the status of those works. While I was unable to debrief Ms. Buckley about the details of these

---

[2] This is the second work that the gallery has delivered to Mr. Nicyper. On August 22, 2007 Mr. Nicyper received the work *(East) Gloucester Harbor* from Salander O'Reilly. (Attached hereto as Ex. C is a true and correct copy of the signed release form). Simon Parks, a restorer that does work for the gallery, found this work after conducting a search pursuant to a subpoena from Mr. Nicyper and returned it to Salander O'Reilly, which, in turn, returned it to Mr. Nicyper.

[3] Ms. Buckley resigned on August 24, 2007.

3

efforts prior to her sudden departure, the efforts made by Ms. Buckley are apparent from reviewing her records, which I have attached hereto. (Attached hereto as Exhibit D is a true and correct copy of Diane Buckley's handwritten notes). In addition, one gallery recently complained about Salander O'Reilly's persistence in attempting to locate and recover Stuart Davis works from them. (Attached hereto as Exhibit E is a true and correct copy of an email from Nathaniel Owings to Caitlin Fitzgerald dated August 30, 2007).

13.     I am aware from conversations with Ms. Buckley, and with counsel, that, prior to the entry of the Order, Mr. Nicyper began contacting galleries and individuals that he thought may be in possession of Stuart Davis works. Although Mr. Davis is well within his rights to do whatever he believes is necessary to recover these works, Ms. Buckley advised me that Mr. Nicyper's actions have resulted in confusion about the location of various Stuart Davis works and to whom the works should be returned. I have been advised by Ms. Buckley and by counsel that Mr. Nicyper did not notify them of his efforts, resulting in Salander O'Reilly making efforts to locate paintings Mr. Nicyper had already found. One example of this is the seven works of art recovered from Babcock Gallery on July 24, 2007. Neither Mr. Nicyper nor the Babcock Gallery informed Salander O'Reilly that the works had been returned.

14.     Due to Ms. Buckley's resignation, I appointed Caitlin Fitzgerald, a Salander O'Reilly employee, to contact third parties who may be in possession of Stuart Davis works. As a result of this new appointment, and in order to ensure full compliance with the Order in light of Plaintiff's motion, I decided that Ms. Fitzgerald should go back and contact again any of the people Ms. Buckley may have spoken with previously, both by phone and in writing.

4

15.     In order to do this, Ms. Fitzgerald created a new contact log which she uses to track the responses of the various individuals and galleries that we believe may be in possession of Stuart Davis works.  (Attached hereto as Ex. F is a true and correct copy of Caitlyn Fitzgerald's contact log).

16.     In addition, a standard information request has been drafted that Ms. Fitzgerald has sent out via fax, email and letter to the various contacts in her log.  On August 30-31, 2007 Ms. Fitzgerald sent out 63 emails.  To date, she has received 5 responses.

17.     Ms. Fitzgerald will continue tracking responses to this information request.  Any works returned to Salander O'Reilly as a result of these efforts will be promptly delivered to Mr. Nicyper.

**Payments Received By Salander O'Reilly**

18.     I have no personal knowledge of an installment payment plan entered into with the Owings Dewey Gallery for the "Four Paintings Sale."  In my position as Chief Financial Officer I am aware that no monies, including but not limited to installment payments, have been received by Salander O'Reilly regarding any Stuart Davis works since the entry of the Order.  It is my understanding that Andrew Kelly, a former employee of Salander O'Reilly, was responsible for the sales invoices for these paintings to Owings Dewey.  It is my further understanding that Mr. Kelly is scheduled to be deposed in this case.

19.     Upon receipt of any installment payments received for Stuart Davis works in the future, I will ensure that these funds are segregated, and delivered to Earl Davis in compliance with the Order.

**Payments Made To Plaintiff**

20. On July 26, 2007, Freeman's Auction House sent a wire transfer to Plaintiff in the amount of $52,452. The amount represented collections to date on proceeds from an auction, the right to proceeds of which Salander O'Reilly transferred to Plaintiff on May 3, 2007, as part of its good faith negotiations with Plaintiff. (Attached hereto as Exhibit G is a true and correct copy of wire transfer record).

**Document Collection Efforts**

21. On July 25, 2007, in compliance with the Order, Salander O'Reilly served all documents in its possession relating to the categories set forth in the Order.

22. I was responsible for overseeing the document collection efforts which resulted in this production.

23. The documents produced are the result of a search for documents relating to the categories set forth in the Order in the personal files of currently employed Salander O'Reilly employees. This search included the hard copy files, email accounts and hard drives of those employees.

24. These searches were conducted by the Salander O'Reilly employees, themselves, and all relevant documents were produced.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2007

ANTONETTE FAVUZZA