UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
EARL DAVIS,                                           : **Electronically Filed**
                    Plaintiff,            :
               -against-                   : 07-CV-4165 (SHS) (DF)
                                            :
SALANDER-O'REILLY GALLERIES LLC      : **DECLARATION OF**
f/k/a SALANDER-O'REILLY GALLERIES INC., : **EDWIN M. LARKIN**
and LAWRENCE B. SALANDER              : **IN SUPPORT OF DEFENDANTS'**
                    Defendants.          : **OPPOSITION TO PLAINTIFF'S**
                                                : **MOTION FOR CONTEMPT AND**
                                                : **FOR A PRELIMINARY**
                                                : **INJUNCTION**
------------------------------------x

       EDWIN M. LARKIN, an attorney at law duly admitted to practice before the courts of the State of New York and the United States District Court for the Southern District of New York, hereby declares:

       1. I am a member of the firm of Winston & Strawn LLP, counsel to Lawrence B. Salander and Salander-O'Reilly Galleries, LLC in this action. I am fully familiar with the facts set forth in this Declaration, which I submit in support of Defendants' Memorandum Of Law In Opposition To Plaintiff's Motion For Contempt And For A Preliminary Injunction. In support of this motion, I also submit the Declaration of Antonette Favuzza.

**The Parties**

       2. Salander-O'Reilly Galleries, LLC ("Salander O'Reilly") is an art gallery known for its collections of Renaissance and Baroque works. It is located at 22 East 71st Street, New York, New York, 10021. The gallery's Managing Director, Lawrence B. Salander, is the first private art dealer to sit on the board of The National Indemnity Project of the National

Endowment for the Humanities. Hereinafter, Lawrence B. Salander and Salander O'Reilly will collectively be referred to as Defendants.

   3. In addition to Old Masters works, Defendants' gallery maintains a selection of artwork from important contemporary American painters and sculptors, including Stuart Davis. The gallery has exhibited Stuart Davis artwork ("Works") for over twenty years. Defendants also sponsored the Stuart Davis catalogue raisonne.

   4. Earl Davis ("Plaintiff") is the son and heir of contemporary artist Stuart Davis. Over the course of his twenty-year relationship with Defendants, Plaintiff provided Defendants with various Works. Some of these Works were exhibited in Defendants' gallery and others were exhibited at galleries throughout the nation. The goal of the parties' arrangement was to market the Works, and augment the reputation of Stuart Davis as an artist.

**Procedural History**

   5. Plaintiff filed this lawsuit on May 29, 2007. (Attached hereto as Ex. A are true and correct copies of the Summons and Complaint in this action dated May 29, 2007). Plaintiff's Complaint asserts seven causes of action: 1) violation of New York's Art and Cultural Affairs; 2) breach of contract; 3) breach of contract and fraudulent inducement to contract; 4) breach of fiduciary duty; 5) recovery of chattels; 6) conversion; and 7) accounting. Counts 1 and 2 are asserted only against Defendant SOR.

   6. On June 27, 2007, Plaintiff followed the Complaint with an Order to Show Cause seeking *inter alia,* an injunction: (1) restraining all sales, consignment or transfer of the Works; (2) ordering the return of all unsold Works to Plaintiff; and (3) ordering expedited discovery. (Attached hereto as Exhibit B is a true and correct copy of the Order to Show Cause dated June 29, 2007; attached hereto as Ex. C is a true and correct copy of Plaintiff's

Memorandum of Law in Support of Motion for Preliminary Injunction and Expedited Discovery; Attached hereto as Ex. D is a true and correct copy of the Declaration of Earl Davis dated June 27, 2007 ("Davis Decl. 6/27/07"); attached hereto as Ex. E is a true and correct copy of the Declaration of Dean R. Nicyper, dated June 27, 2007 ("Nicyper Decl. 6/27/07")).

7.  The filing of the Order to Show Cause resulted in negotiations between the parties and, ultimately, a stipulation dated July 7, 2007. This Stipulation was so-ordered on July 9, 2007 ("Order"). (Attached hereto as Ex. F is a true and correct copy of the Stipulation and Order dated July 9, 2007).

8.  Under the Order: 1) Defendants are enjoined, restrained and prohibited from selling, lending, leasing, consigning, encumbering, assigning or pledging as collateral, or transferring or attempting to transfer to any person or any interest in the Works; 2) Defendants are to retrieve all Works that have not been sold from any third party; 3) Defendants are to segregate from all of Defendants' other moneys and deliver to Plaintiff, all installments that Defendants may receive after July 9, 2007; 4) Defendants had to produce certain categories of documents relating to the Works by July 25, 2007; 5) upon Plaintiff's perceived failure of Defendants to deliver these documents Plaintiff was given with the right to subpoena appropriate third parties; and 6) the parties had until August 10, 2007 to negotiate in good faith and attempt to resolve the claims in this action. (Ex. F, Stipulation and Order). The Order contemplates that Defendant's compliance with Items 1-4 would be ongoing and would continue until complete. Nowhere in the Order is there a time requirement for the completion of Items 1-4. Also nowhere in the Order is there a provision stating that it is a violation of the Order if Plaintiff recovers any of the Works before Defendants do.

9. The parties were unable to negotiate a settlement by the August 10th deadline, however, Defendants remain available to continue such discussions.

10. On August 20, 2007, without any notice to Defendants, Plaintiff made this motion for contempt of court and for a preliminary injunction. (Attached hereto as Ex G is the Declaration of Earl Davis dated August 20, 2007 ("Davis Decl. 8/20/07"); attached hereto as Ex. H is the Declaration of Dean R. Nicyper, dated August 20, 2007 ("Nicyper Decl. 8/20/07"); attached hereto as Ex. I is a true and correct copy of the Memorandum of Law in Support of Plaintiff's Motion for Contempt and for a Preliminary Injunction ). Defendants first learned of any alleged noncompliance with the Order when they were served with Plaintiff's motion papers.

11. With regard to the second prong of Plaintiff's motion for injunctive relief, he has provided no new evidence that shows the July 9th Order has not preserved the status quo. (*Compare* Ex. D, Davis Decl. 6/27/07 ¶¶ 20, 46, 50, 52-55, 60; *with* Ex. G, Davis Decl. 8/20/07 ¶¶ 20, 46, 50, 52, 60; *compare* Ex. E, Nicyper Decl. 6/27/07 ¶¶ 4-6 *with* Ex. H, Nicyper Decl. 8/20/07 ¶¶ 4-6 )

**Retrieval Of The Works**

12. Upon review of Plaintiff's document production of August 17, 2007, Defendants became aware that, on June 4, 2007, Plaintiff's counsel began contacting galleries and individuals he thought may be in possession of any of the Works. (Attached hereto a Exhibit J are letters dated June 4, 2007 from Dean Nicyper to various galleries). Defendants also learned that on July 10, 2007, one day after entry of the Order in this action, Plaintiff's counsel was contacted by Babcock Galleries and informed that the gallery was in possession of 7 of the Works. (Attached hereto as Ex. K, is a true and correct copy of the July 10, 2007 letter to Dean Nicyper from Babcock Galleries). At no time did Plaintiff's counsel reveal, even during the

course of settlement negotiations, that it was aware of Babcock's possession of these Works. Plaintiff ultimately received the 7 works from Babcock Galleries on July 24, 2007. (Attached hereto as Ex. L, is a true and correct copy of the July 24, 2007 release form). It was not until plaintiff's filing of this motion that Plaintiff is attempting to hold Defendants in contempt due to their failure to procure the Works from Babcock. However, the efforts of Plaintiff's counsel were set in motion well before entry of the Order.

13. A second work, entitled *(East) Gloucester Harbor* was returned to Plaintiff's counsel by Salander O'Reilly on August 22, 2007. (Attached hereto as Ex. M is a true and correct copy of a release form dated August 22, 2007). Simon Parks, a restorer that does work for the gallery, found this work after conducting a search pursuant to a subpoena from Plaintiff's counsel and returned it to Salander O'Reilly. However, because of the manner in which it was returned, it was not checked in with Salander's registrar. After being advised by Plaintiffs counsel on August 21, 2007 that the Work was at the gallery, it was returned to Plaintiff's counsel the following morning.

14. On August 28, 2007, Defendants returned *Cigar and Hand Held Before View Looking Northwest from Approximately Third Avenue and East 14th Street*, to Plaintiff's counsel. (Attached hereto as Ex. N, is a true and correct copy of the release form, dated August 28, 2007).

15. Although Plaintiff is certainly entitled to take whatever actions that may be appropriate to recover the Works, by doing so without advising Defendants, Plaintiff's actions have had the unintended effect of undermining Defendants' efforts in contacting third parties and resulted in confusion about the location of various Works and to whom they should be returned. In fact, one of Salander O'Reilly's former employees, Diane Buckley, informed both counsel and

Ms. Favuzza that her attempts at retrieving the Works were directly impacted by Plaintiff's own recovery efforts.[1]

16. On August 28, 2007, I contacted Dean Nicyper, Plaintiff's counsel and suggested that Plaintiff provide Defendants with a protocol for locating the Works, and that this motion be held in abeyance until the success of that protocol is determined. The purpose of my call was to coordinate both parties' efforts in recovering any outstanding Works, eliminate confusion and ensure that Plaintiff was comfortable with the procedures in place to recover the Works. Mr. Nicyper declined this offer.

**Plaintiff's Available Remedies Under The Order And The Scheduling Order**

17. The language of the Order, which was agreed upon by the parties, contemplates that Defendants would have had a little more than two weeks in which to collect and produce, all documents relating to the categories set forth in the Order. (Ex. F, ¶ 5). During that time period, Defendants made a thorough search for all categories of documents set forth in the Order. In the event of a perceived deficiency in Defendants' production, the language of the Order provided Plaintiff with a remedy–the ability to subpoena third parties to garner further information about the location and status of the Works. (Ex. F, ¶ 6).

18. Plaintiff is also entitled to expedited discovery under the Scheduling Order entered by the Court on August 27, 2007. (Attached hereto as Ex. O, is the August 27, 2007 Scheduling Order). This entitles Plaintiff to additional opportunities in which to gather information relating to various categories of documents. In fact Plaintiff served document

---

[1] Ms. Buckley resigned her position at Salander O'Reilly suddenly on August 24, 2007. Counsel has contacted Ms. Buckley on multiple occasions in order to obtain information regarding her efforts in retrieving the Works. Ms. Buckley has indicated that she is out of town on a family emergency but that she may be willing speak with us upon her return. Counsel therefore reserves the right to request to submit a supplemental declaration in this action on behalf of Ms. Buckley.

6

requests on Defendants on August 22, 2007, which include the category of documents at issue on this motion. These Document Requests include a request for "[a]ll documents concerning any Works, including documents concerning the location of any Works, shipping records, UCC filings, and all agreements, contracts, and other records concerning the acquisition, purchase, sale, consignment, granting of security interests, transfer or other disposal, encumbering or possession of any Works." (Attached hereto as Ex. P, are true and correct copies of Plaintiff's First Request for the Production of Documents)

**The Parties' Document Productions**

19. On July 10, 2007, Defense counsel met with Defendants to discuss the terms of the Order. At this time, Larry Salander appointed Antonette Favuzza, the Chief Financial Officer of Salander O'Reilly, to oversee compliance. Ms. Favuzza has taken this role seriously and his been working with counsel on a near daily basis to ensure compliance with the Order.

20. On July 25, 2007, Defense counsel served on Plaintiff's counsel a CD containing over 1000 pages of documents collected by Salander O'Reilly employees. Since that time, Defense counsel has received no word from Plaintiff's counsel indicating that the production was deficient.

21. On August 16, 2007, Plaintiff's counsel sent subpoenas for depositions and documents to several galleries. (Attached hereto as Ex. Q is a true and correct copy of a letter dated August 16, 2007 from Dean Nicyper to David Mollón).

22. On July 26, 2007, counsel for both parties met for settlement discussions, but no agreement was reached. At this meeting, Plaintiff's counsel was asked to provide Defendants with documents supporting his valuation of the Works at issue in this case. This

request was made because the Plaintiff's valuation of the Works is a key factor that must be considered by Defendants in order to reach a settlement.

23. On August 10, 2007, the deadline for the settlement negotiations set forth in the Order expired.

24. On August 17, 2007, Plaintiff produced documents to Defendants. Lacking from this production were documents relating to the valuation of the Works.

**Plaintiff's Error Regarding UCC Financing Statements**

25. On August 28, 2007, counsel for Defendants conducted a search for UCC Financing Statements in order to verify Mr. Nicyper's argument that Joseph Carroll has several outstanding financing statements on Stuart Davis works. This search revealed that Joseph Carroll filed an amended statement, on July 13, 2007, which supersedes all prior filings referenced in Mr. Nicyper's declaration. This statement lists only one painting as collateral, which is not one of the Works. (Attached hereto as Ex. R, is a true and correct copy of the Amended UCC Financing Statement, dated July 13, 2007). Defendants' search also revealed, however, that Joseph Carroll retains an interest in one Stuart Davis work entitled *Elite (Black and White Variation on Pochade)* based on a UCC Financing Statement that was initially filed on October 19, 2005, and last amended on January 12, 2006 to include this Work. (Attached hereto as Ex. S is a true and correct copy of UCC Financing Statements for Joseph Carroll beginning on October 19, 2005).

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2007

_____
EDWIN M. LARKIN