UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| EARL DAVIS, | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| SALANDER-O'REILLY GALLERIES, LLC | : |
| f/k/a SALANDER O'REILLY GALLERIES | : |
| INC., | : |
| and LAWRENCE B. SALANDER | : |
| Defendants. | : |

<u>Electronically Filed</u>

07-CV-4165 (SHS) (DF)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT AND FOR A PRELIMINARY INJUNCTION

**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10017
(212) 294-6700

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................ 1

BACKGROUND ................................................................................ 3

ARGUMENT ..................................................................................... 9

I.     DEFENDANTS CANNOT, AND SHOULD NOT, BE HELD IN CONTEMPT OF THE ORDER .................................................. 9

     A.    Plaintiff Has Not Provided Clear And Convincing Evidence That Defendants Have Violated The Order .................................................. 10

          1.    Retrieval And Delivery Of The Works ...................................... 12

          2.    Receipt Of Installment Payments ............................................... 13

          3.    Defendants' Document Production ............................................. 14

     B.    Defendants Have Been Diligent In Complying With The Order ............. 15

     C.    The Order Is Not Clear And Unambiguous As To Certain Of Defendants' Obligations ............................................................. 16

II.    PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION AT THIS STAGE OF THE PROCEEDINGS .......................................... 19

     A.    Plaintiff's Requested Relief Is Overreaching ........................................ 20

          1.    Plaintiff May Not Seek Monetary Relief Via A Preliminary Injunction .............................................................. 20

          2.    The Existence Of A Trust Relationship Would Not Entitle Plaintiff To Payment .............................................................. 20

     B.    Plaintiff Has Not Shown Irreparable Harm ...................................……….22

CONCLUSION……………………………………………………………..24

# TABLE OF AUTHORITIES

## CASES

*adidas Sportsshufabriken Adi Dassler Stiftung & Company  v. New Generation*,
1993 U.S. Dist. LEXIS 10810 (S.D.N.Y. Aug. 4, 1993) .......................................... 16

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 279 F. Supp. 2d 341 (S.D.N.Y.
August 28, 2003).................................................................................10, 11, 17-18

*Bank of Credit Commerce International v. Tamraz*, 2006 U.S. Dist. LEXIS 39256
(S.D.N.Y. June 13, 2006) ................................................................................11, 17

*Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562
(S.D.N.Y. 2001) ..................................................................................................... 11

*City  of New York v. United States Department Of Commerce*, 739 F. Supp. 761
(E.D.N.Y. 1990)…………………………………………………................……….18

*Clissuras v. City University of New York*, 2005 WL 3288097 (S.D.N.Y.
December 2, 2005)..................................................................................................... 17

*Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S. Ct. (1940)…………………22

*Demolition Workers Union v. Mackroyce Contracting Corp.*, 2000 WL 297244
(S.D.N.Y. March 22, 2000)…………………………...........................................……22

*Energy Capital Co. v. Caribbean Trading & Fidelity Corp.*,
1996 U.S. Dist. LEXIS 4121, (S.D.N.Y. April 3, 1996).....................................11,15

*Experience Hendrix v. Chalpin, PPX*, 2007 WL 541620 (S.D.N.Y. February 15,
2007)........................................................................................................................ 11

*Horizon Marketing. v. Kingdom International Ltd.*, 244 F. Supp. 2d 131
(E.D.N.Y. 2003) ..................................................................................................... 21

*Iron Mountain Information Management, Inc. v. Taddeo*, 455 F. Supp. 2d 124
(E.D.N.Y. 2006)................................................................................ 19-20, 22

*Interel Environmental Technologies, Inc. v. United States Jersey Bank,* 894 F.
Supp. 623 (E.D.N.Y. 1995) ..................................................................................... 20

*Jessup v. American Kennel Club, Inc.*, 862 F. Supp. 1122 (S.D.N.Y.1994).......... 20, 23-24

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 2006 WL 2128785
(S.D.N.Y. July 28, 2006) ........................................................................ 17

*King v. Allied Vision*, *Ltd.*  65 F.3d 1051(2d Cir. 1995) ............................. 9, 10, 15, 17, 18

*Medallic Art Co., Ltd. v. Novus Marketing, Inc.*, 2003 WL 22053130 (S.D.N.Y.
September 2, 2003) ..........................................................................16, 17

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 212 F.3d 94
(2d Cir. 2002)..............................................................................19, 20

*National Basketball Association v. Design Management Consultants, Inc.*, 289
F. Supp. 373 (S.D.N.Y. 2003) ................................................................ 11

*Paramedics Electromedicina Comercial, Ltda v. GE Medical  Systems
Information Technologies, Inc.*, 369 F.3d 645 (2d Cir. 2004).................................. 11

*Perez v. Danbury Hospital*, 347 F.3d 419 (2d Cir. 2003) ...............................10, 19

*Quantum Corporate Funding Ltd. v. Assist You Home Healthcare Services of VA.*,
144 F. Supp. 2d  241 (S.D.N.Y.2001)…………………………………………....22

*Rodriguez ex rel. Rodriguez  v. DeBuono*, 175 F.3d 227 (2d Cir.1999)........................ 22

*Rosewood Apartments Corp. v. Perpignano*, 200 F. Supp. 2d 269 (S.D.N.Y.
2002)………………………………………………………………….......... 23

*Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922 (S.D.N.Y. 1991)............................... 16

*Schnaffner & Marx v. Alexander's Department Store*, 341 F.2d 101
(2d Cir.1965).............................................................................  10

*Swan Brewery Co. Ltd. v. United States Trust Company of New York*, 145 F.R.D.
40 (S.D.N.Y. 1992) ......................................................................20-21

*Tap Publications v. Chinese Yellow Pages, Inc.*, 1996 WL 509718 (S.D.N.Y.
September 9, 1996) ....................................................................10, 13, 15

*United States v. Armour & Co.*, 402 U.S. 673, (1971). .................................... 18

*United States v.Local 1804-1 Longshoremen's Association*, 443 F.3d 1091, 1095
(2d Cir. 1995). ........................................................................... 10

*Wesselmann v. International Images, Inc.*, 169 Misc.2d 476, 645 N.Y.S.2d
263 (Sup. Ct. New York County 1996) ........................................................ 21

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, 2000 WL 1610790
 (S.D.N.Y. October 27, 2000)...................................................................................... 21

*Yurman Design, Inc. v. Chaindom Enteprises*, 2002 WL 1402305 (S.D.N.Y. June
 27, 2002).…………………………….....................................................…………10

Defendants Salander-O'Reilly Galleries, LLC f/k/a Salander O'Reilly Galleries Inc. ("Salander O'Reilly") and Lawrence B. Salander ("Salander" or "Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion for Contempt and for a Preliminary Injunction.

## PRELIMINARY STATEMENT

Plaintiff is the son of contemporary artist Stuart Davis, who over the course of a twenty-year relationship with Salander O'Reilly's managing director, Lawrence Salander, consigned hundreds of Stuart Davis works of art (the "Works" or "Stuart Davis Works") to Defendants. In this action, Plaintiff is seeking the recovery of, and the proceeds of sales of, the Works from Defendants. As part of a Stipulation and Order, entered on July 9, 2007, Defendants agreed to, *inter alia*: 1) refrain from selling or encumbering any of the Works; 2) retrieve any works that have not been sold; 3) segregate any installment payments received after the date of the Order for prior sales of the Works; 4) produce certain categories documents relating to the Works by July 25, 2007; 5) permit Plaintiff to subpoena third parties if Defendants fail to produce documents relating to the Works; and, 6) to engage in settlement discussions. Plaintiff's motion has failed to show any violation of the Order, much less that Defendants are in contempt.

Each of the instances cited by Plaintiff as examples of contemptuous behavior by Defendants have been either concocted by Plaintiff, are incompletely described or simply exaggerated in order to justify the extraordinary relief being sought by Plaintiff in this motion. As the accompanying Declarations demonstrate, since the entry of the Order, Defendants:

      1. have not sold or encumbered any of the Works;

      2. have returned the Works in their possession;

      3. have sought the return of works that have not been sold and are not in their possession;

       4.  have not received any installment payments for any of the works and intend to segregate any monies received, if any are received;

       5.  produced documents relating to the categories set forth in the Order concerning the Works; and,

       6.  have not objected to Plaintiff's serving subpoenas to third parties relating to the Works.

Nothing Plaintiff alleges contradicts these facts. Defendants have been working diligently to locate and recover any Stuart Davis Work that is unaccounted for and have sought to comply with the Order in all other aspects. Without clear and convincing evidence that Defendants have violated the Order and are not making reasonable attempts to comply with the Order, Plaintiff's motion for contempt must be denied.

Similarly, Plaintiff's motion for a preliminary injunction should likewise be denied. The purpose of a preliminary injunction is to preserve the *status quo* and to prevent irreparable harm to the party seeking the injunction. In his motion, Plaintiff has come forward with no evidence that the safeguards in place as a result of the Order are not sufficient to preserve the *status quo* and prevent irreparable harm to Plaintiff. Indeed, other than the alleged violations of the Order in the motion, Plaintiff has come forward with no new evidence justifying injunctive relief other than what was presented on the original Motion for a Preliminary Injunction, dated June 27, 2007, a result of which was the Order negotiated by the parties. As demonstrated by the accompanying Declarations, Defendants are complying with the Order and Plaintiff has, through his own efforts and those of the Defendants, recovered nine Works. Defendants are continuing to search for, locate, recover and return Works to Plaintiff. Thus, the likelihood of immediate irreparable harm arising from the potential loss or sale of a Work is minimal. Moreover, the

relief Plaintiff is seeking relating to the financial aspects to the case is contrary to well settled case law prohibiting the award of monetary relief via an injunction. In sum, Defendants respectfully submit that Plaintiff's motion seeking an Order of contempt and a preliminary injunction should be denied in its entirety.

## BACKGROUND

### A.    The Parties

Defendant Salander-O'Reilly Galleries is an art gallery known for its collections of Renaissance and Baroque works. It is located at 22 East 71st Street, New York, New York, 10021. The gallery's Managing Director, Defendant Lawrence B. Salander, is well known and highly respected in the art community. For example, he is the first private art dealer to sit on the board of The National Indemnity Project of the National Endowment for the Humanities. In addition to Old Masters works, Defendants' gallery maintains a selection of artwork from important contemporary American painters and sculptors, including Stuart Davis. The gallery has exhibited Stuart Davis artwork for over twenty years. Defendants also sponsored the Stuart Davis catalogue raisonne.

Plaintiff is the son and heir of contemporary artist Stuart Davis. Over the course of his twenty-year relationship with Defendants, Plaintiff provided Defendants with various Works. Some of these Works were exhibited in Defendants' gallery and others were exhibited at galleries throughout the nation. The goal of the parties' arrangement was to market the Works and to augment the reputation of Stuart Davis as an artist, thereby increasing the value of Mr. Davis' work.

### B.    Procedural History

Plaintiff filed this lawsuit on May 29, 2007. (Larkin Decl. ¶ 5) On June 30, 2007, Plaintiff served an Order to Show Cause seeking *inter alia,* an injunction: (1) restraining all

sales, consignment or transfer of the Works; (2) ordering the return of all unsold Works to Plaintiff; and (3) ordering expedited discovery.   Service of the Order to Show Cause resulted in negotiations between the parties regarding the possibility of settlement and steps that could be taken to preserve the *status quo* while settlement discussions took place.   The parties entered into a Stipulation on July 7, 2007 which was so ordered by the Court on July 9, 2007 (the "Order"). Under the Order:

     1.     Defendants are enjoined, restrained and prohibited from selling, lending, leasing, consigning, encumbering, assigning or pledging as collateral, or transferring or attempting to transfer to any person or any interest in the Works;

     2.     Defendants are to retrieve all Works that have not been sold from any third party;

     3.     Defendants are to segregate from all of Defendants' other moneys and deliver to Plaintiff, all installments that Defendants may receive after July 9, 2007;

     4.     Defendants had to produce certain categories of document relating to the Works by July 25, 2007;

     5.     Upon Plaintiff's perceived failure of Defendants to deliver the documents the Order provided Plaintiff with the right to subpoena appropriate third parties; and

     6.     The parties had until August 10, 2007 to negotiate in good faith and attempt to resolve the claims in this action.

The parties met on July 25, 2007, but were unable to negotiate a settlement by the August 10th deadline.   On August 20, 2007, without any prior notification to Defendants, Plaintiff made this motion for contempt of court and for a preliminary injunction.   The preliminary injunctive relief being sought by the instant motion is the same as the injunctive relief sought by Plaintiff in his June 27, 2007 motion.

**C.**    **Defendants Efforts to Comply with the Order**

As set forth in the accompanying Declaration of Antonette Favuzza, dated September 4, 2007, ("Favuzza Decl."), since the entry of the Order, Defendants have made every good faith effort to comply with its requirements.

1.    The Alienation of Stuart Davis Works.

The order required that Salander O'Reilly not sell, lease, consign, assign, or pledge as collateral any Stuart Davis Works beginning July 9, 2007. Because the vast majority of Works in Defendants possession were returned to Mr. Davis prior to the entry of the Order, Salander has not sold, leased, loaned or encumbered any Work since the date of the Order. (Favuzza Decl. ¶ 7). Plaintiffs motion papers do not present any evidence that any sale, lease, loan or encumberence of any Stuart Davis Work has taken place since the Order has been entered.

2.    Retrieval of Stuart Davis Works.

On July 10, 2007, Defense counsel met with Defendants to discuss the terms of the Order and what steps needed to be taken by Defendants to comply with the Order. (Favuzza Decl**.** ¶ 4). Ms. Favuzza, the Chief Financial Officer of Salander-O'Reilly Galleries, was appointed to oversee Defendants compliance efforts. (*Id*.) Shortly thereafter, Ms. Favuzza assigned a Salander O'Reilly employee, Diane Buckley, the task of locating any works that were unaccounted for by contacting all third parties that Defendants were aware of that could possibly be in possession of the Works. (*Id.* ¶ 10). Ms. Buckley made regular phone calls to both galleries and individuals attempting to ascertain the status of any Stuart Davis Work that had not been sold or returned to Mr. Davis. (*Id.* ¶¶ 11-12). From conversations Ms. Favuzza had with Ms. Buckley and from Ms. Buckley's handwritten notes, Ms. Buckley worked on locating Stuart Davis Works on a daily basis from the day she was assigned the task of locating the Works.

Ms. Buckley suddenly resigned on August 24, 2007. Because of this, Ms. Favuzza appointed a second Salander-O'Reilly employee, Caitlyn Fitzgerald, to take over the task of contacting third parties. Concerned about Ms. Buckley's sudden departure and to make certain everything was being done to locate any unaccounted for Work, Ms. Favuzza asked Ms. Fitzgerald to create a new contact log and to again contact in writing and by telephone any individuals or galleries that Ms. Buckley may have spoken with previously. (Favuzza Decl. ¶ 14) In addition, a standard information request has been drafted that Ms. Fitzgerald has sent out via fax, email and letter to the various contacts in her log. On August 30-31, 2007, Ms. Fitzgerald emailed 63 contacts. (*Id.* ¶16). To date, she has received 5 responses to the request for information. Indeed, one contact at a gallery complained about Defendants' prior persistence in contacting him attempting to locate Stuart Davis Works. (*Id.* ¶ 12).

As a result of Defendants' searches and efforts, on August 28, 2007, Defendants located and returned *Cigar and Hand Held Before View Looking Northwest from Approximately Third Avenue and East 14th Street*, to Plaintiff's counsel. (*Id.* ¶ 8). This is the second work that the gallery has delivered to Mr. Nicyper. On August 22, 2007, Plaintiff's counsel received the work *(East) Gloucester Harbor* from Salander O'Reilly. Simon Parks, a restorer that does work for the gallery, found this work after receiving a subpoena from Plaintiff's counsel and returned it to Salander O'Reilly. (*Id.* ¶ 8). However, because of the manner in which it was returned, it was not checked in with Salander O'Reilly's Registrar. After being advised by Plaintiff's counsel on August 21, 2007 that the Work was at the gallery, Defendants returned the Work to Plaintiff's counsel the following morning. (Declaration of Edwin M. Larkin dated September 4, 2007 ("Larkin Decl.") ¶ 13).

3.    <u>Payments Received By Salander O'Reilly</u>.

The Order required that any payments received by Salander O'Reilly for the sale of any Stuart Davis Work, including installment payments received after the date of the Order for sales taking place prior to the Order, be segregated and turned over to Plaintiff. As set forth in Ms. Favuzza's Declaration, Defendants have not received any payments for any Stuart Davis Work since the entry of the Order, including the August payment for the 4-Painting sale referenced in Plaintiff's moving papers. (*Id.* ¶ 18). In addition, on July 26, 2007, Freeman's Auction House sent a wire transfer to Plaintiff in the amount of $52,452. The amount represented collections to date on proceeds from an auction, the right to proceeds of which Salander O'Reilly transferred to Plaintiff on May 3, 2007, as part of its good faith negotiations with Plaintiff. (*Id.*).

4.    <u>Document Production and Expedited Discovery</u>.

The Order required the Defendants produce documents *inter alia*, relating to the sale, consignment, pledging or loaning of any Stuart Davis Work set forth on a schedule attached to the Order. Defendants conducted a search of their files for the documents set forth in the Order, including a search of hard copy files, emails and employees hard drives. (Favuzza Decl. ¶ 23). In compliance with the Order, on July 25, 2007, Defendants served Plaintiff with over 1000 pages of documents in their possession regarding any of the Works.[1] (Larkin Decl. ¶ 20). Prior to the filing of the present motion, Defendants received no communications from Plaintiff's counsel regarding any perceived deficiency in this production. (*Id.*).

---

[1]    In his declaration, Plaintiff's Counsel complains that Defendants' documents were produced one day late, on July 26, 2007. (Declaration of Dean Nicyper ¶ 8 ("Nicpyer Decl.")). This is semantics. Under Local Rule 5.3, all papers, excluding a subpoena, summons and complaint or paper required by statute or rule to be served in the same manner as a summons and complaint, can be served via overnight mail. Defendants served the CD containing their document production via overnight mail on July 25th. Had Mr. Nicyper wanted the CD in hand on July 25th, he could have negotiated that point to be included in the Order.

On August 16, 2007, Plaintiff's counsel sent deposition and document subpoenas to various galleries in order to obtain information about the Works. This remedy was provided to Plaintiff, in the language of the Order, in the event of a perceived deficiency in Defendants' July 25th document production. To date, Defendants have received no documents that have been provided to Plaintiff in response to those subpoenas. On August 22, 2007 Plaintiff served document request on Defendants, which includes the category of documents at issue on this motion. (*Id.* ¶18).

**D.    Plaintiff's Efforts to Recover Stuart Davis Works**

Shortly after entry of the Order Defendants became aware that, a full month prior to the entry of the Order, Plaintiff's counsel began contacting galleries and individuals he thought may be in possession of any of the Works. (Favuzza Decl. ¶ 13; Larkin Decl. ¶ 12). Although nothing prohibits Plaintiff from seeking to recover Stuart Davis Works on his own, as set forth in Ms. Favuzza's Declaration, these efforts undermined Defendants' efforts in contacting third parties, and resulted in much confusion about the location of various Works and to whom they should be returned (Favuzza Decl. ¶ 13; *see also* Larkin Decl. ¶ 15). Plaintiff's counsel undertook these recovery efforts on his own and did not advise Defendants as to what he was doing, whom he had contacted or what the results of his efforts were. As a result, Defendants expended time and energy attempting to locate paintings that had already been returned to Plaintiff. (Favuzza Decl. ¶ 13).

One example of this is the Babcock Gallery from which Plaintiff received seven Works on July 24, 2007. (Larkin Decl. ¶ 12). Defendants inability to locate and return works from the Babcock Gallery forms the basis of one of Plaintiff's alleged violations of the Order. (*Id.*). Immediately after the entry of the Order, on July 10, 2007, Plaintiff's counsel received a letter

from the Babcock Gallery in response to an inquiry he made approximately 2 months earlier, confirming that the Babcock had possession of seven Stuart Davis Works. (*Id*.) Plaintiff's counsel apparently arranged directly for the return for the Works and received them on or about July 24, 2007. (*Id.*). Not until the filing of this motion and Plaintiff's production of documents on August 17, 2007, were Defendants advised that the Stuart Davis Works located at the Babcock Galleries had, in fact, been returned to Plaintiff. (*Id.* ¶ 24).

Although prior to filing the instant motion Plaintiff's counsel never advised Defendants that it considered their efforts at recovering the Stuart Davis Works to be deficient, in light of the allegations made in the motion, after the motion was filed, counsel for Salander contacted Plaintiff's counsel and suggested that the parties work together to develop a protocol to make certain that Plaintiff was comfortable with Defendants' efforts at recovering the Stuart Davis Works. (*Id.* ¶ 16). Defendants' counsel suggested that the portion of Plaintiff's motion regarding the efforts to locate the Works be held in abeyance while the parties worked together to locate the Works. Plaintiff's counsel declined and did not suggest any way that the parties could work together to locate additional Works. (*Id.*)

## ARGUMENT

### I.  DEFENDANTS CANNOT, AND SHOULD NOT, BE HELD IN CONTEMPT OF THE ORDER

To establish a civil contempt of court the movant must establish that 1) the order the contemnor failed to comply with is clear and unambiguous; 2) the proof of noncompliance is clear and convincing; and 3) the contemnor has not diligently attempted to comply in a reasonable manner. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). An order of contempt is a harsh remedy, that should be used sparingly. "Because the 'contempt power is among the most formidable weapons in the court's arsenal, and one with significant potential for

harm if it is wielded imprudently … the district court's power to hold a party in contempt – whether civil or criminal—is significantly circumscribed.'" *Tap Publ'ns Inc. v. Chinese Yellow Pages, Inc.*, No. 95 Civ. 5043, 1996 WL 509718, at *1 (S.D.N.Y. 1996) (alteration in original) (quoting *United States v. Local 1804-1 Longshoreman's Ass'n*, 44 F.3d 1091, 1095 (2d Cir. 1995)). Indeed, a finding of contempt will not be had "'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Perez v. Danbury Hosp.*, 347 F.3d 419,425 (2d Cir. 2003) (citation omitted).

Plaintiff's motion for contempt must be denied as Plaintiff has not provided clear and convincing evidence of: 1) Defendants' violation of the Order, whether actual or technical; 2) Defendants' failure to make a reasonably diligent effort to comply with the Order; and 3) a deadline in which Defendants were required to comply with certain obligations under the Order. For these reasons, Plaintiff's motion cannot succeed.

### A.    Plaintiff Has Not Provided Clear And Convincing Evidence That Defendants Have Violated The Order

Plaintiff has not provided clear and convincing evidence that Defendants violated the Order and therefore, his motion must be denied. "[A] contempt order is warranted only where the *moving* party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict."[2] *Schnaffner & Marx v. Alexander's Dep't Store,* 341 F.2d 101, 102 (2d Cir. 1965); *King*, 65 F.3d at 1058 (emphasis added); *see Yurman v. Chaindom Enters.,* No. 99-Civ. 9307, 2002 WL 1402305 (S.D.N.Y. 2002). Clear and convincing evidence

---

[2]    Plaintiff's moving papers confuse this burden of proof, stating that the "burden is on the contemnor to produce evidence of his inability to comply." (Moving Br. at 14 (quoting *A.V. By Versace, Inc. v. Gianni Versace S.p.A.*, 279 F. Supp. 2d 341, 346 (S.D.N.Y. 2003)). A close reading of the case cited by Plaintiff for this proposition reveals that he has confused the burden of proof on a contempt motion. Unlike the present case, in *A.V. By Versace*, there was clear and convincing evidence that the defendant was in violation of the court's orders. 279 F. Supp. 2d at 346. The defendant argued that he was not in violation because he was unable to comply. This argument shifted the burden to the defendant to produce evidence of his inability to comply with the court's orders. *Id.*

is required "because a contempt order is a severe sanction." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001). Moreover, "it is well established that the failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt" as courts may excuse "unintentional or technical noncompliance with an order." *Energy Capital Co. v. Caribbean Trading & Fidelity Corp.*, No. 93-Civ.-8100, 1996 U.S. Dist. LEXIS 4121, at * 5 (S.D.N.Y. April 3, 1996). Plaintiff's evidence on this motion is not only insufficient to show an actual violation of the Order but, even if it were enough to show a technical violation, the Court need not find Defendants in contempt.[3]

Plaintiff alleges throughout his moving papers that Defendants violated the Order by failing to: 1) retrieve, and deliver to Plaintiff, all Works which Defendants consigned, pledged, loaned or transferred; 2) deliver installment payments paid to Defendants after entry of the Order and 3) produce documents concerning the pledge of the Works as collateral. (*See* Plaintiff's Memorandum Of Law In Support Of Motion For Contempt And For Preliminary Injunction ("Moving Br.") at 14-15; Nicyper Decl. ¶¶ 8-11; Davis Decl. ¶¶ 55-58).

---

[3]    It appears that Plaintiff simply grouped several cases into a footnote in his brief and the relevance of these cases to Defendants' alleged violation of the Order is unclear. Regardless, the cases relied upon by Plaintiff are inapposite. As discussed *supra* Pt. I, several of the cases belie the prematurity of Plaintiff's motion because they involve continuing and flagrant violations of an order over a long period of time. Moreover, in some of the cases cited by Plaintiff, the defendant was admittedly in violation of the Court's order and thus argued an inability to comply. *See A.V. by Versace, Inc. v. Gianni Versace, S.P.A.*, 279 F. Supp. 2d 341 (S.D.N.Y. Aug. 28, 2003) (finding contempt because defendant admitted violation and failed to show inability to comply); *Yurman Design, Inc. v. Chaindom Enters.*, No. 99 Civ. 9307, 2002 WL 1402305 (S.D.N.Y. June 27, 2002) (defendant admitted that it did not send recall letters mandated by order); *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562 (S.D.N.Y. 2001) (finding of contempt where defendant admitted violation). As discussed above, Defendants have not violated the Order, whether actually or technically. Finally, in the remaining cases cited by Plaintiff, the defendants were in clear violation of the orders at issue, as evidenced by a complete failure to follow the terms of the orders. *See Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 650 (2d Cir. 2004) (finding contempt where defendant failed to get parallel litigation dismissed in clear violation of court's directive requiring defendant to "immediately take all steps necessary" to get case dismissed); *Experience Hendrix v. Chalpin, PPX*, No. 06-Civ. 9926, 2007 WL 541620 (S.D.N.Y. 2007) (finding contempt where defendant "simply disregarded" TRO); *Bank of Credit Commerce Int'l v. Tamraz*, No. 97-Civ-4759, 2006 U.S. Dist. LEXIS 39256 (S.D.N.Y. June 13, 2006) (Stein, J.) (finding contempt where defendant repeatedly, and completely, failed to comply with discovery obligations set forth in multiple orders); *Nat'l Basketball Ass'n v. Design Mgmt Consultants, Inc.*, 289 F. Supp. 373 (S.D.N.Y. 2003) (finding contempt where defendant complied with *none* of the provisions of the order).

1.    **Retrieval And Delivery Of The Works**

Plaintiff has failed to submit any evidence that Defendants violated the provision of the Order requiring them to retrieve, and deliver to Plaintiff, all the Works that have been consigned, pledged, loaned or transferred to third parties. Plaintiff's main contention is that Defendants have violated the Order because Plaintiff's counsel was able to retrieve Stuart Davis works from the Babcock Gallery before Defendants were. (Nicyper Decl. ¶ 10; Moving Br. at 14-15). None of these allegations rise to the level of contempt, and, as set forth below, Defendants have not violated the Order. Plaintiff did not disclose, however, that Plaintiff's counsel was advised on July 10, 2007, the day after the Order was entered, that the Babcock Gallery had seven Stuart Davis paintings in its possession. (Larkin Decl. ¶ 12). Moreover, although the Works were returned to Plaintiff on July 24, 2007, Plaintiff failed to advise Defendants until the filing of this motion. (*Id.*). Instead of advising Defendants of the location of these Works and that they had been recovered, Plaintiff attempted to engineer a violation of the Order by remaining silent and engrafting a time requirement for Defendant's compliance which is not contained in the Order.

The Order has no timeframe in which Defendants are required to complete the task of locating and delivering the Works to Plaintiff and, plainly, contemplates that Defendants will comply until the task is finished. (*See infra* Pt. I.C.). Moreover, the Order contains no provision indicating that the Order has been violated if Plaintiff is able to recover a work before Defendants can. It is, and has been, Defendants policy since July 10, 2007 to make every effort to fully comply with the retrieval provision set forth in the July 9th Order. (Favuzza Decl. ¶¶ 13-14). Defendants have done this by appointing two employees, in succession, to both call and email third parties that they are aware of that may be in possession of the Works. (*Id.*) One gallery has actually complained to Defendants about their persistence. (*Id.* ¶ 12). Noteworthy is the fact that the efforts of Plaintiff's counsel in attempting to locate the Works has caused

confusion as to whom the galleries should return the Works, and has interfered with Defendants' efforts. (*Id*.)

Defendants' efforts have been amplified since Defendants became aware of this motion. (*Id*. ¶ 14). In fact, counsel for Defendants contacted Plaintiff's counsel on August 28, 2007, suggesting that the portion of this motion relating to the recovery of Works be held in abeyance and that a protocol be devised by Plaintiff for Defendants' retrieval of the Works. (Larkin Decl. ¶16). Plaintiff's counsel refused the offer and let this motion stand. As a result of Defendants' searches and efforts to date, on August 28, 2007, a sketch entitled *Cigar and Hand Held Before View Looking Northwest from Approximately Third Avenue and East 14th Street* was returned to Plaintiff's counsel. (Favuzza Decl. ¶ 8).

Here, Plaintiff has failed to allege any violation of the Order with respect to the retrieval and delivery of the Works. Moreover, Plaintiff's refusal to cooperate with Defendants lends no further credence to his argument that Defendants should be held in contempt. *Tap Pub'ns. Inc.*, 1996 WL 509718, at *2-3 (considering plaintiff's refusal to cooperate with extending deadline for compliance with order when denying contempt motion). Defendant's have been working diligently to recover the Works as required by the Order, the fact that plaintiff was successfully able to recover Works on his own does not constitute clear and convincing evidence to the contrary. Plaintiff's motion should be denied.

### 2.    Receipt Of Installment Payments

Plaintiff has also failed to provide clear and convincing evidence of a violation of the Order with respect to Defendants' receipt of installment payments. The order requires Defendants to segregate and forward all installment payments to Plaintiff *upon receipt*. (Larkin Decl., Ex. F, Order ¶ 3). Although Plaintiff surmises that there must have been an August installment paid on the 4-Paintings Sale, he presents no evidence, much less clear and convincing

evidence that such a payment was actually received by Defendants and not passed on to Plaintiff. As set forth in the Favuzza Declaration, Defendants have received no installment payments since the entry of the Order. (Favuzza Decl. ¶ 18). Defendants are aware of their obligations under the Order and have been and will continue to comply with them. As such, Defendants cannot be in violation of the Order with respect to the transmittal of installment payments to Plaintiff.

Plaintiff has failed to show by clear and convincing evidence that Defendants have violated the Order in any respect and therefore his motion must fail. Indeed, many of the "facts" presented in Plaintiff's moving papers are mere conjecture, particularly since Plaintiff has recently refused to discuss Plaintiff's complaints with Defendants' counsel in order to determine the facts. (Larkin Decl. ¶ 16).

### 3.    Defendants' Document Production

Shortly after a meeting with counsel on July 10, 2007, where the terms of the Order were discussed, Defendants' employees searched their personal files and computers for all electronic and hard copy documents relating to the categories set forth in the Order. (Favuzza Decl. ¶ 23).[4] All documents found as a result of this search were served on Plaintiff's counsel on July 25, 2007. (*Id.* ¶ 21). From the time in which the documents were served, until the time of Plaintiff's motion on August 20, 2007, Defendants received no notice that their production was deficient in any way, or that Defendants were in violation of the Order. (Larkin Decl. ¶ 20).[5] However, on August 16, 2007, Plaintiff's counsel served deposition and document subpoenas on several

---

[4]    While the issue at the forefront of this motion is compliance with the Order, it should be noted that no sales, pledges, consignments or loans with respect to the Works have taken place since entry of the Order. Moreover, Mr. Nicyper's provision of the UCC Financing Statements taken out by Joe Carroll has been found by Defendants' counsel to be incomplete. A UCC Search conducted on August 29, 2007 reveals an amendment to the Joseph Carroll Financing Statement which lists only one painting as collateral. (Larkin Decl. ¶25). This is not a Stuart Davis work. At present, Joseph Carroll retains an interest in only one Stuart Davis work. (*Id.*).

[5]    It is apparent that Plaintiff's counsel reviewed the documents produced by Defendants in preparing to make this motion and, thus, in the normal course of practice could have sent a letter or called Defendants' counsel if he believed the production was deficient in some way. (Nyciper Decl. ¶ 8; Moving Br. at 14).

galleries – a remedy provided for in the Order for any perceived deficiencies in Defendants' document production. On August 22, 2007, Plaintiff's counsel also served document requests on Defendants which seek the very same documents at issue here. These Document Requests include a request for:

> All documents concerning any Works, including documents concerning the location of any Works, shipping records, UCC filings, and all agreements, contracts, and other records concerning the acquisition, purchase, sale, consignment, granting of security interests, transfer or other disposal, encumbering or possession of any Works. (Larkin Decl. ¶ 8, Ex. P).

Under the circumstances it is clear that Defendants' alleged failure to produce documents relating to the pledge of the Works, is not a clear violation of the Order. At best, Plaintiff has alleged a technical violation of the Order, which does not merit a finding of contempt. *See Energy Capital Co.*, 1996 U.S. Dist. LEXIS, at *8 (refusing to hold defendant in contempt where an accounting statement and affidavit were unsatisfactory to plaintiff and defendant failed to produce all documents at the time set forth in order); *Tap Pub'ns Inc.*, 1996 WL 509718, at **2-3 (refusing to find contempt where defendant handed in report required by terms of order thirty days late). Particularly where, as here, Plaintiff was provided with, and *utilized*, subpoena power as a result of any perceived deficiency in Defendants' July 25, 2007 document production. (Larkin Decl. ¶21).

## B.    Defendants Have Been Diligent In Complying With The Order

Apart from Plaintiff's failure to provide clear and convincing evidence that Defendants violated the Order, Plaintiff has failed to show that Defendants have not "diligently attempted to comply in a reasonable manner." *King*, 65 F.3d at 1058. "To determine reasonable diligence, courts examine the defendant's actions and consider whether they are based on a good faith and

reasonable interpretation of the court order." *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 927 (S.D.N.Y. 1991).

As discussed above, it is clear that Defendants have acted diligently in attempting to comply with the Order where Defendants: 1) understood the order as requiring expeditious action; 2) took action in regard to complying with the order as early as July 10, 2007; 3) made diligent searches to comply with the deadline for document production; 4) appointed employees to call and email third parties regarding the status of the Works; and 5) have already returned one Work to Plaintiff. *See supra* Pt. I.A. Defendants also reached out to Plaintiff after the making of this motion to work out a protocol for retrieving the Works that would be acceptable to both parties – this was not required by the terms of the Order. (Larkin Decl. ¶ 16). Even if Plaintiff could somehow show that Defendants did not act diligently since entry of the Order, a finding of contempt would still be too harsh a remedy. *See adidas Sportsshufabriken Adi Dassler Stiftung & Co. v. New Generation*, No. 85 Civ. 5519, 1993 U.S. Dist. LEXIS 10810, (S.D.N.Y. Aug. 4, 1993) (where defendant had shown little or no effort in complying with an order, or heeding a warning letter from counsel, court still reluctant to find contempt).

### C.    The Order Is Not Clear And Unambiguous As To Certain Of Defendants' Obligations

As set forth above, Plaintiff's principal contention is that recovery of the Works was not achieved in accordance with some unstated deadline. In order to form the basis of a contempt sanction, the provision of the Order at issue must be "clear and unambiguous." "A 'clear and unambiguous' order is one 'specific and definite enough to apprise those within its scope of the conduct being proscribed.'" *Medallic Art Co., Ltd. v. Novus Mktg., Inc.*, No. 99 Civ. 502, 2003 WL 22053130, at *1 (S.D.N.Y. Sept. 2, 2003) (citation omitted). Moreover, "the alleged contemnor must be able to ascertain from the four corners of the order precisely what acts are

forbidden." *Id.*; s*ee King*, 65 F.3d at 1060 (no contempt found where plaintiff attempted to impose obligations on defendant that were not within explicitly in the order). Finally, "[a]ny ambiguities in an order should be read in favor of the person charged with contempt." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04-Civ.-7369, 2006 WL 2128785, at * 3 (S.D.N.Y. Jul. 28, 2006).

The language of the Order requires the Defendants to do, or refrain from doing, several things, only two of which have a time requirement – the production of documents by July 25, 2007, and the completion of settlement negotiations by August 10, 2007. (Larkin Decl., ¶ 8 Ex. F). Defendants have complied with the document production provision, Favuzza Decl. ¶ 21, and the parties were unable to reach a settlement by the August 10th deadline. (*Id.* ¶ 9). The remaining obligations under the order have no specific deadline.

When looking at the "four corners" of the Order, it is obvious that Defendants' compliance would be ongoing until the paintings were recovered making Plaintiff's contempt motion premature at best. *See King*, 65 F.3d at 1060; *Medallic Art Co.*, 2003 WL 22053130 at *1. Indeed, the cases relied upon by Plaintiff in his moving papers demonstrate the prematurity of his motion. *See, e.g., Bank of Credit and Commerce Int'l Ltd. v. Tamraz*, No. 97-Civ. 4759, 2006 WL 1643202, at *1 (S.D.N.Y. June 13, 2006) (Stein, J.) (defendant's initial violation occurred two years after entry of stipulation and order and was followed by "persistent evasion" of two additional orders); *Clissuras v. City Univ. of New York*, No. 02-Civ. 8130, 2005 WL 3288097, at *1 (S.D.N.Y. Dec. 2, 2005) (defendant found in violation of permanent injunction for action taken approximately two and a half years after issuance of permanent injunction); *A.V. By Versace, Inc. v. Gianni Versace, S.P.A.,* 279 F. Supp. 2d 341, 344 (S.D.N.Y. Aug. 28, 2003)

(defendant found in contempt two years after issuance of preliminary injunction and sanctioned after "long-term" refusal to obey *three* court orders).

Had Plaintiff wanted the Defendants to complete their obligations under the Order within a certain timeframe, he could have negotiated a deadline with Defendants prior to entry of the Order. *See United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) (purpose should not be read into agreement between parties which embodies what the respective parties "have the bargaining power and skill to achieve"); *King*, 65 F.3d at 1060 (quoting *Armour*). He cannot now use this motion to impose unreasonable time constraints on Defendants which are not set forth in the Order. S*ee City of New York v. United States Dep't Of Commerce*, 739 F. Supp. 761, 768 (E.D.N.Y. 1990) (courts "are not entitled to expand or contract the agreement of the parties"). Irrespective of Plaintiff's failure to request the implementation of a timeline, Defendants have taken it upon themselves to view the Order as imposing an obligation on them to perform its requirements expeditiously. (Favuzza Decl. ¶ 6). This is not an attitude that Defendants can, or should be, sanctioned for.

Moreover, as discussed *infra*, it is impossible for Defendants to have violated the Order when they have been making diligent efforts to comply with its terms since the day after the Order was entered. (*Id.* (noting meeting with Defendants' counsel on July 10, 2007)). To hold Defendants in contempt at this juncture, a mere 42 days after entry of the Order, would be a harsh remedy indeed. Particularly where, as here, Defendants have been diligent in their efforts to track down the Works. (*See id.* ¶¶ 13-17). Plaintiff has failed to establish that the deadline for complying with each of Defendants' obligations was "clear and unambiguous" under the Order. Where, as here, an order does not specify the required actions in a way that leaves "no uncertainty in the minds of those to whom the order is addressed" it follows that Defendants

cannot be held in violation of the Order. *Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003).

## II.   PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION AT THIS STAGE OF THE PROCEEDINGS

Since the inception of this litigation, Defendants have never asserted a right in the Works. Moreover, by entering into the Order, Defendants have agreed to take all steps necessary to retrieve any unsold Stuart Davis works that may be in the possession of third parties and to deliver them to Plaintiff.  (Larkin Decl.  ¶ 8, Ex F).  The relief that Plaintiff seeks via the portion of his motion for a preliminary injunction is therefore related only to the return of *funds* he may be owed as a result of Defendants' sale of the Works prior to the entry of the Order.  Not only is this the same relief that Plaintiff sought in his prior motion of June 27, 2007, which he could have insisted be included in Order, but Plaintiff has provided no new evidence that would warrant such relief.  (*Id.* ¶ 11).  Plaintiff is therefore improperly attempting to use this motion as a vehicle for obtaining approximately $9 million which he believes he is entitled to, and which is heavily contested by the parties.  His motion must therefore be denied.

"The preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies.'"  *Iron Mountain Info. Mgm't, Inc. v. Taddeo*, 455 F. Supp. 2d 124, 132 (E.D.N.Y. 2006) (citation omitted).  In order to prevail on a motion for a preliminary injunction, a party must establish:  1) irreparable harm; and 2) either a) a likelihood of success on the merits or b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 212 F.3d 94, 96 (2d Cir. 2002).  "A preliminary injunction is not appropriate where monetary damages will serve as adequate compensation."  *Iron Mountain*

*Info. Mgm't, Inc.*, 455 F. Supp. 2d at 132; *see Interel Envtl. Techs., Inc. v. United Jersey Bank*, 894 F. Supp. 623 (S.D.N.Y. 1995).

A.     **Plaintiff's Requested Relief Is Overreaching**

1.     **Plaintiff May Not Seek Monetary Relief Via A Preliminary Injunction**

Even if Plaintiff could meet the required elements for injunctive relief, which he cannot, he is still not entitled to a cash payment at this stage of the proceedings.  Plaintiff claims that he is entitled to a "preliminary injunction mandating that Defendants deliver to Plaintiff all trust funds consisting of proceeds that Defendants received from sales of Plaintiff's Works." (Moving Br. at 24).  However, in requesting this relief Plaintiff is overreaching, ignoring the well settled rule that "where money damages are adequate compensation, a preliminary injunction will not issue." *Jessup v. American Kennel Club, Inc.*, 862 F. Supp. 1122, 1127 (S.D.N.Y. 1994).

Here, Plaintiff's counsel makes the bald assertion that Plaintiff has not been paid for works sold years ago, but offers no support for this statement with his declaration.  (Nicyper Decl. ¶ 5).  Plaintiff's counsel has also used a particular document produced by Defendants to assess the amount allegedly owed at approximately $9 million. (*Id.* ¶ 16).  However, Plaintiff's counsel admits that there is confusion at this point in the litigation regarding the amount that is actually owed to Plaintiff.  (*Id.* ¶ 10; *see also* Larkin Decl., Ex. D (Davis Decl. ¶46 (6/27/07))). Thus, irrespective of the fact that Plaintiff is not entitled to the relief he is seeking under the law, it is improper for him to ask the Court to rely on the arbitrary amount arrived at by Plaintiff's counsel in directing a turnover of proceeds from the sale of the Works.

2.     **The Existence Of A Trust Relationship Would Not Entitle Plaintiff To Payment**

The relief requested by Plaintiff is unwarranted even in cases giving rise to a fiduciary relationship. *See Swan Brewery Co. Ltd. v. United States Trust Co. of New York*, 145 F.R.D. 40

(S.D.N.Y. 1992) (trust beneficiary not entitled to preliminary injunction where claims were for money). Plaintiff argues that he is entitled to a preliminary injunction because of his status as a trust beneficiary, yet neither of the cases he relies on in support of this argument would allow this Court to direct payment to Plaintiff of the proceeds which resulted from Defendants' sale of the Works. For instance, in *Horizon Marketing v. Kingdom International Ltd.*, 244 F. Supp. 2d 131, 135 (E.D.N.Y. 2003), a case in which the defendant was no longer in business, the court granted a preliminary injunction which prevented the defendant from *dissipating* any funds held in trust for the plaintiffs. Moreover, the statutory trust in this case applied to produce sellers, or small businesses, that would not be able to survive if the funds held by the defendants were dissipated. The court in *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, No. 00 Civ. 8051, 2000 WL 1610790, *1 (S.D.N.Y. 2000), similarly granted a preliminary injunction to prevent the *dissipation* of funds, and did not order payment of the funds.

Plaintiff also fails to provide one case in which a court granted injunctive relief for the payment of sale proceeds under Section 12 of New York's Art and Cultural Affairs Law. Indeed, the one case cited by Plaintiff granted injunctive relief to prevent further alienation of an artist's *works*. *Wesselmann v. Int'l Images, Inc.*, 169 Misc. 2d 476, 645 N.Y.S.2d 263 (Sup. Ct. New York County 1996) (*Wesselmann II*). In *Wesselman II*, the court took no action with respect to payment of sales proceeds despite the fact that the defendant admittedly owed money to the plaintiff, and it was unclear whether the defendant would be able to pay a resulting judgment. *Id.* at 482-83, 645 N.Y.S.2d at 267. The relief sought in *Wesselman II* is already in place here, as the July 9th order prevents further alienation of such Works. Moreover, Plaintiff has failed to show that he will suffer irreparable harm if the Court does not intervene.

### B.    <u>Plaintiff Has Not Shown Irreparable Harm</u>

Even if the Court were to determine that Plaintiff's status as a trust beneficiary warrants some form of relief, Plaintiff has failed to demonstrate a likelihood of irreparable harm.  The irreparable harm requirement is "'the single most important prerequisite for the issuance of a preliminary injunction.'" *Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (citation omitted).  "Accordingly, 'the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'"  *Id.* (citation omitted).  In order to show irreparable harm "[a] successful plaintiff must demonstrate that absent interim relief it will suffer an injury that is neither remote nor speculative, but actual and imminent."  *Iron Mountain Information Mgm't, Inc.*, 455 F. Supp. 2d 124, 141 (E.D.N.Y. 2006).  However, "[i]rreparable injury is one that cannot be redressed through a monetary award.  Where money damages are adequate compensation a preliminary injunction should not issue."  *Id.*[6]

Here, Plaintiff claims that he has *already been* irreparably harmed by Defendants' alleged dissipation of sales proceeds received for the Works.  (Moving Br. at 21).  Thus, any irreparable harm claimed by Plaintiff is not imminent.  Moreover, the possibility of future harm occurring to Plaintiff has been cured by the Order, which prohibits Defendants from selling any of the Works.  (Larkin Decl. ¶¶ 8, 11).  No sales have occurred since entry of the Order. (Favuzza Decl. ¶ 18).

Plaintiff's allegations therefore have no teeth.  If dissipation of the proceeds has already occurred, and the order put in place now prevents further sales of the Works, then there can be no likelihood of irreparable harm.  The remaining remedy for Plaintiff is a trial on the merits to

---

[6]        The cases Plaintiff cites in support of his irreparable harm argument are distinguishable from the case at hand.  In *Quantum Corporate Funding, Ltd. v. Assist You Home Healthcare Servs.*, 144 F. Supp. 2d 241 (S.D.N.Y. 2001) the defendants businesses had already failed.  *Demolition Workers Union v. Mackroyce Contracting Corp.*, No. 97-Civ.-4094, 2000 WL 297244, at *8 (S.D.N.Y. Mar. 22, 2000) is an ERISA case which is excepted from the rule that "equity will not enjoin either prohibitively or mandatorily the payment of money."  Finally, in *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) the court did not mandate the payment of money, and issued a narrowly tailored injunction.

assess the value of what Defendants allegedly owe which, as discussed *supra*, is a question that is central to this litigation.

Plaintiff further contends that he is being irreparably harmed by Defendants' ongoing liabilities and business transactions, such as the acquisition of other works of art, and settlement of debts to other individuals.  (Moving Br. at 21).  However, "merely alleging an opponent's inability to pay damages does not constitute irreparable harm."  *Rosewood Apartments Corp. v. Perpignano*, 200 F. Supp. 2d 269, 278 (S.D.N.Y. 2002).

The manner in which Defendants go about the regular business of running a gallery has no immediate relationship to the prior sale of the Works.  Indeed, the fact that Defendants are still running the gallery inures to Plaintiff's benefit, and belie Plaintiff's inability to show a likelihood of irreparable harm.  (Nicyper Decl. ¶ 5).  Whereas Defendants have paid off their debts to others ("millions of dollars" according to Plaintiff's counsel), so too may Plaintiff expect to obtain relief after trial.

Finally, Plaintiff's allegations concerning Defendants "house of cards" falling, while used repeatedly by Plaintiff's counsel to attack Defendants, has been taken out of context.  (*Cf.* Nicyper Decl. ¶ 6 (8/20/07); Larkin Decl. Ex. E (Nicyper Decl. ¶ 5(6/27/07))).  At a hearing for a preliminary injunction in an unrelated case, Defendants' attorney used this term to explain to the court that an injunction preventing Defendants from using their bank accounts to buy and sell art, the very business of a gallery, would put Defendants out of business.  (Nicyper Decl. Ex. 9, at 5). Irrespective of this misinterpretation of Defendants' prior statements, Plaintiff has not shown that there is a *likelihood* of irreparable injury here.  Mere conjecture on Plaintiff's part that there is a *possibility* of harm does not meet the standard for injunctive relief in the Second Circuit.  *Jessup*,

862 F. Supp. at 1127 (denying preliminary injunction where plaintiffs had shown they would possibly be put out of business by defendant's actions).

A preliminary injunction at this stage, directing the payment of proceeds to Plaintiff is not only improper but it is premature.  It is up to the Court to determine what monies may be owed to Plaintiff at trial.

## **CONCLUSION**

For all of the foregoing reasons Plaintiff's Motion for Contempt and for a Preliminary Injunction should be denied.

Dated: New York, New York
   September 4, 2007

WINSTON & STRAWN LLP


_____/S/__Edwin M. Larkin_____
Edwin M. Larkin (EL-8413)
Kara L. Gorycki (KG-3519)
Winston & Strawn LLP
200 Park Avenue
New York, New York  10166
Tel. (212) 294-6700

Attorneys for Defendants