Flemming Zulack Williamson Zauderer LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Dean R. Nicyper, Esq. (DRN-7757)

Attorneys for Plaintiff Earl Davis

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
EARL DAVIS,

                             Plaintiff,

     -against-

SALANDER O'REILLY GALLERIES LLC
f/k/a SALANDER O'REILLY GALLERIES INC.,
and LAWRENCE B. SALANDER

                             Defendants.
------------------------------------------------------------------ X

Index No. 07 Civ. 4165 (SHS) (DF)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CONTEMPT AND FOR A PRELIMINARY INJUNCTION

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
(212) 412-9500

Dean R. Nicyper, Esq.

Attorneys for Plaintiff Earl Davis

Of Counsel:

  Jean Marie Hackett, Esq.
  Erica Fabrikant, Esq.

297664

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

    I.    DEFENDANTS SHOULD BE HELD IN CONTEMPT BECAUSE
THEY ALL BUT IGNORED THIS COURT'S ORDER UNTIL PLAINTIFF
MOVED FOR CONTEMPT ................................................................................. 2

    II.   DEFENDANTS SHOULD BE ORDERED TO TURN OVER ALL
TRUST FUNDS DEFENDANTS HOLD FOR THE SOLE BENEFIT
OF PLAINTIFF ..................................................................................................... 7

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

PAGE

Cases

Acqua Grill, Inc. v. S.T.F.B. Corp.,
  1997 WL 563305 (S.D.N.Y. Sept. 8, 1997)...................................................................... 3

B.U.S.A. Corp. v. Ecoglaves, Inc.,
  No. 05 Civ. 9988 (SCR), 2006 WL 3302841 (S.D.N.Y. Jan. 31, 2006)...................... 7

Building Serv. 32B-J Pension Fund v. Vandeveer Estates Holding, LLC,
  127 F. Supp. 2d 490 (S.D.N.Y. 2001).................................................................... 3, 4

Chere Amie, Inc. v. Windstar Apparel, Corp.,
  175 F. Supp. 2d 562 (S.D.N.Y. 2001).................................................................... 4, 5

Clissuras v. City Univ. of New York,
  No. 02 Civ.8130, 2005 WL 3288097 (S.D.N.Y. Dec. 2, 2005)................................ 3

Diamond v. Salander-O'Reilly Galleries LLC, et al.
  Index No. 602284/07 (Sup. Ct. N.Y. Cnty.) ............................................................. 9

Energy Capital Co. v. Caribbean Trading,
  93 Civ. 8100, 1996 U.S. Dist. LEXIS 4121 (S.D.N.Y. Apr. 4, 1996)...................... 6

Horizon Mktg. v. Kingdom Int'l Ltd.,
  244 F. Supp. 2d 131 (E.D.N.Y. 2003) ................................................................... 10

Interel Envtl. Techs, Inc. v. United Jersey Bank,
  894 F. Supp. 623 (S.D.N.Y. 1995) ........................................................................... 9

Iron Mountain Info. Mgm't, Inc. v. Taddeo,
  455 F. Supp. 2d 124 (E.D.N.Y. 2006) ..................................................................... 9

Jessup v. Am. Kennel Club, Inc.,
  862 F. Supp. 1122 (S.D.N.Y. 1994).......................................................................... 9

King v. Allied Vision, Ltd.,
  65 F.3d 1051 (2d Cir.1995)...................................................................................... 3

Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.,
  289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003)..................................................... 3, 4, 5, 6

## TABLE OF AUTHORITIES (cont'd)

PAGE

Rosewood Apartment Corp. v. Perpignano,
   200 F. Supp. 2d 269 (S.D.N.Y. 2002)..................................................................................9

Swan Brewery Co. Ltd. v. U. S. Trust Co.,
   145 F.R.D. 40 (S.D.N.Y. 1992) .............................................................................................9

Weitzman v. Stein,
   98 F.3d 717 (2d Cir. 1996)....................................................................................................3

Wesselmann v. Int'l Images,
   172 Misc. 2d 247, 657 N.Y.S.2d 284 (Sup. Ct. N.Y. Co. 1996) .......................................10

Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.,
   No. 00 Civ. 8051 (JSM), 2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000) ........................9-10

Statute

New York Arts and Cultural Affairs Law § 12.01.1(a) (McKinney 1984 Supp. 2007) .........2, 7, 10

Plaintiff Earl Davis respectfully submits this reply memorandum of law in further support of his motion (this "Motion"): (1) requesting that this Court hold defendants Salander O'Reilly Galleries, LLC ("SOR" or the "Gallery") and Lawrence B. Salander ("Salander") (SOR and Salander are referred to herein collectively as "Defendants") in civil contempt, and for the requested relief related thereto; and (2) for a preliminary injunction directing Defendants to pay to Plaintiff all trust funds that Defendants statutorily are deemed to hold for his benefit solely.

## PRELIMINARY STATEMENT[1]

As is demonstrated by the facts set forth in the moving papers and declarations accompanying this Reply, Defendants did little or nothing to comply with this Court's Order dated July 9, 2007 ("Order") until after this Motion was filed. They did not contact other dealers or galleries. (Reply Dec. ¶27.) They did not return any of Plaintiff's works of art (the "Works"), although Plaintiff located and retrieved several himself. (Id. at ¶¶8, 26, 29.) They did not deliver to Plaintiff a Work that was returned to them until Plaintiff demanded it after fortuitously learning that it had been returned. (Id. at ¶10.) They did not return a Work that they had been keeping in one of their senior executive's offices until after this Motion was filed. (Id. at ¶11.) They did not produce any documents showing they pledged Plaintiff's Works as collateral for their own debts, even though they signed and prepared many such documents (some now produced by non-parties). (Id. at ¶¶20, 21, 49, 50.) They did not produce any documents under three of the four categories in the Order, and, with respect to the fourth category, produced nothing other than invoices for only 50 of the 103 Works at issue. (Id. at ¶¶14, 15, 17.) They did not produce any documents whatsoever relating to their receipt of sales proceeds or other things

---

[1] The facts are set forth in the accompanying Reply Declaration of Dean R. Nicyper accompanying this memorandum of law ("Reply Dec."), the accompanying Declaration of Simon Parkes, dated September 6, 2007 ("Parkes Dec."), the Declaration of Earl Davis in Support of Motion for Contempt and a Preliminary Injunction, dated August 20, 2007, ("Davis Dec."), and the Declaration of Dean R. Nicyper in Support of Motion for Contempt and A Preliminary Injunction, dated August 20, 2007 ("Moving Dec.").

296922

of value for their transfers of the Works (many third parties have now produced such documents in response to subpoenas). (Id. at ¶¶15, 20, 23.) They never sought information from, and have not submitted any statements by, the three people most knowledgeable about their handling of the Works and sales proceeds, namely Salander, Leigh Morse ("Morse") and Andrew Kelly ("Kelly"). (Id. at ¶¶5, 6, 35.) This clear and convincing evidence demonstrates that Defendants failed to comply with the Order. Defendants accordingly should be held in contempt, and depositions of Salander, Morse and Kelly should be ordered by the Court, and Defendants should be ordered to produce all financial documents pertaining to all sale proceeds or other things of value they received for the Works.

In addition, a preliminary injunction should issue requiring Defendants to turn over the trust fund sale proceeds to which Plaintiff alone is entitled. Article 12 of the New York Art and Cultural Affairs law ("NYACA") creates trust property rights solely for the benefit of Plaintiff in his Works and all proceeds from sales of his Works. Defendants admit they received at least $9,382,500 in trust funds from sales of his Works. Only Plaintiff has a right to those trust funds. Yet, Defendants misappropriated Defendants' Works and do not dispute that they dissipated at least some of Plaintiff's sale proceed trust funds – but, they refuse to disclose to what extent. They offer no assurance that they will not dissipate further trust funds. An injunction therefore should be issued requiring Defendants to turn over at least $9,382,500 in such trust funds.

## I. DEFENDANTS SHOULD BE HELD IN CONTEMPT BECAUSE THEY ALL BUT IGNORED THIS COURT'S ORDER UNTIL PLAINTIFF MOVED FOR CONTEMPT

Defendants' Opposition makes clear that this contempt motion is the sole reason Defendants began any demonstrable efforts to comply with the provisions of the Order. The Order, among other things, plainly required Defendants "to retrieve all Works that have not yet been sold from those persons or entities to which Defendants consigned, pledged, loaned or

297664

2

transferred such unsold Works, and deliver such unsold Works to Plaintiff." (See Moving Dec. at Ex. 3.) "There can be no question that the terms of that injunction are clear and unambiguous." Clissuras v. City Univ. of New York, No. 02 Civ.8130, 2005 WL 3288097, at *2 (S.D.N.Y. Dec. 2, 2005). An order is "clear and unambiguous where it is specific and definite enough to apprise those within its scope of the conduct that is being proscribed or required." Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc., 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003) ("NBA").

Defendants, however, attempt to create ambiguity where none exists by arguing that this directive is unclear because it did not state a deadline for full compliance. An order requiring a defendant to take action, however, is clear even without a deadline. See Bldg. Serv. 32B-J Pension Fund v. Vandeveer Estates Holding, LLC, 127 F. Supp. 2d 490, 496 (S.D.N.Y. 2001) (order "clearly required" defendant to post a bond even though it "set no deadline" for compliance, and defendant's two-month delay in posting bond was a willful violation of order); see also Acqua Grill, Inc. v. S.T.F.B. Corp., No. 96 Civ. 4780 (KMW), 1997 WL 563305, at *3 (S.D.N.Y. Sept. 8, 1997) (finding order "clear and unambiguous" in "advising defendants in plain and straightforward for language of their obligations," including directive that they "recall and deliver up" to plaintiff all items bearing the infringing mark).[2] A finding of contempt is proper if Defendants "did not diligently attempt to comply with the order in a *reasonably timely* manner." See Bldg. Serv., 127 F. Supp. 2d at 496 (emphasis added) (citing, *inter alia*, Weitzman v. Stein, 98 F.3d 717, 718 (2d Cir. 1996)). Even Defendants admit that the Order required them, at the very least, to act "expeditiously." See Defs' Corrected Mem. of Law In Opp. to Plaintiff's Mot. for Contempt And For A Preliminary Injunction ("Defs' Opp.") at 18.

---

[2] Indeed, in King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir.1995) – cited by Defendants – the Second Circuit rejected a defendant's attempt to use the "no deadline" excuse to justify his delayed attempt at compliance. The defendant argued that its failure to send a mailing required by the order, for more than three weeks after its entry, was acceptable because it "only required [defendant] to take immediate steps, without imposing a firm deadline." Id. The Second Circuit affirmed the District Court's finding that this "ran afoul of . . . the Decree." Id.

297664                              3

Defendants' argument that this motion is premature because a "mere 42 days" has passed since entry of the Order (see Defs' Opp. at 17) – as if years must pass before a court order gains any force – makes no sense.[3] A violation of a court order is a violation punishable by contempt, regardless of whether it occurs weeks or years after the Order's entry.[4]

Documents attached to the Favuzza Declaration demonstrate that Defendants did not make any inquiries of third parties to retrieve Works until August 30th – nine days after this Motion was served. See Bldg. Serv., 127 F. Supp. 2d at 496-97 ("The fact that the bond was filed on the return date of the contempt motion suggests more than coincidence, and strongly indicates that the motion itself was the sole reason for compliance with the prior order"); Reply Dec. ¶¶27, 30. Several dealers who conducted business in Stuart Davis artwork confirmed this. See Parkes Dec. (no one from SOR contacted Parkes anytime after the Order); e-mails from The Peters Gallery, Owings Dewing Fine Arts, Joseph Carroll and Joseph Carroll Ltd. confirming that SOR did not contact them between July 1, 2007 and August 24, 2007 (attached as Exhibit G to the Reply Dec.). "That reasonably, if not easily, avoidable violations occurred ten days after the Order's entry indicates that defendants did not "explore [] every avenue for [compliance]." NBA, 289 F. Supp. 2d at 377.

---

[3] See Defs' Opp. at 17, citing cases holding a defendant in contempt for committing a violation after the order had been effect for two or more years to support their contention that a violation does not "count" unless the court order has been in effect for years. Defendants' contention is contrary to law. See Bldg. Serv., 127 F. Supp. 2d at 496 (defendant's two-month delay in posting bond constituted willful violation of court's order, even though there was no deadline); Chere Amie, Inc. v. Windstar Apparel, Corp., 175 F. Supp. 2d 562, 564-65 (S.D.N.Y. 2001) (holding defendant in contempt where any steps to comply did not start until two weeks after injunction directing it to recall and deliver to plaintiffs all infringing products; violations were discovered within a month following order).

[4] Defendants unsuccessfully attempt to distinguish cases cited by Plaintiff, claiming that these cases involved "flagrant" or "long-term" violations, or situations where the defendant admitted the violation (see Defs' Opp. at 11, n.3), as if the violation committed here – where Defendants clearly made no attempts to retrieve Works – is somehow permissible or not flagrant. See, e.g., NBA, 289 F. Supp. 2d at 377 (noting, where defendants attempted to "downplay" sales of merchandise after the Order, that "the Order does not permit *any* sales") (emphasis in original). Moreover, Plaintiff would welcome Defendant Salander's testifying in court to admit, explain or deny his inaction with respect to the Order, as occurred in Chere Amie, 175 F. Supp. 2d at 564. See Defs' Opp. at 11, n.3. Defendant Salander did not submit an affidavit on this motion, even though he possesses the most knowledge about Defendants' disposition of Plaintiffs' Works and sales proceeds and how to retrieve them.

According to Defendants, SOR's new CFO, Ms. Favuzza, was assigned to locate and retrieve works on July 10th. See Declaration of A. Favuzza ("Favuzza Dec."), ¶4. She in turn delegated the task to Diane Buckley.[5] Id. at ¶10. Ms. Favuzza claims that it merely "was [her] understanding" that Ms. Buckley "worked on this assignment." Id. at ¶11.[6] 11-13. Ms. Favuzza did not "debrief" Ms. Buckley about any efforts, see id. at ¶12, even though she learned of this motion on Monday, August 20th (id. at ¶5), and Ms. Buckley did not resign until Friday, August 24th. Defendants therefore offer only bald, self-serving assertions of compliance between July 7th and August 30th -- not any evidence of "reasonable diligence." See NBA, 289 F. Supp. 2d at 376-77; Chere Amie, 175 F. Supp. 2d at 566.

After this motion was filed, the evidence tells quite a different story. Defendants sent 63 e-mail inquiries on August 30th and 31st (Favuzza Dec. ¶16 and Ex. F), and created a "standard information request form" (Favuzza Dec. ¶16 and Ex. E). These end-of-August activities easily could have been undertaken within days after the Order, but were not until nearly two months later and nine days after this Motion was filed.

Defendants also failed to meet their obligation to "employ reasonable diligence and energy" with respect to provisions of the Order requiring the production of documents concerning Works pledged as collateral. See Moving Dec. ¶¶7-8, 11; Reply Dec. ¶¶14, 20-21. Defendants produced no documents relating to their pledging many of the Works as collateral for

---

[5] As Ms. Favuzza was only recently employed at SOR, it is unclear why she even was given this task instead of Salander, Morse or Kelly, the three employees with the most knowledge about Defendants' disposition of the Works and sales proceeds.

[6] Defendants purportedly attach Ms. Buckley's notes regarding her "assignment" (Favuzza Dec., Ex. D) – an undated list regarding Stuart Davis Works that does not appear in any way to be connected to the Order. It does not give any information about inquiries made or responses received. Defendants undertook those activities only after this contempt motion was filed. (Compare Ex. D of the Favuzza Dec., with Exhibit E). In fact, this chart appears to be related to other efforts of Buckley in the past regarding Davis Works. (See Davis Dec. ¶44, and Ex. 9; Reply Dec. ¶30.) The typed date on the chart, May 4, 2007, has been crossed out, with the date July 26, 2006 hand-written in, but there is essentially no hand-written information that would indicate that any work was done on this "assignment" after May 4th. See Ex. D. to Favuzza Dec., Doc 22-2, at p. 27 of 50.

297664                                    5

their own debts. Defendants argue that this was merely "a technical violation." Defs' Opp. at 15. It was not.[7] Since this motion was filed, non-parties produced numerous documents signed by Salander, others at SOR, SOR's counsel and SOR's bank (First Republic Bank) concerning security interests Defendants purported to give to others in Plaintiff's Works (Reply Dec. ¶20-21 and Ex. D). The signatures and e-mail authorship demonstrate that Defendants have had these responsive documents in their possession, custody or control, yet failed to produce any of them.

In further violation of the Order, Defendants failed to deliver any installment payments to Plaintiff, even though Defendants produced a document showing installment payments still being made for the 4-Painting Sale, one of which came due on August 2, 2007. Moving Dec. ¶11, and Ex. 13. Ms. Favuzza admits she has "no personal knowledge of an installment payment plan." It is thus unclear how she knew what monies related to this payment plan to testify that none was received. Nor is it clear that she knows whether *any* incoming funds concern *any* Stuart Davis Works. Defendant Salander, in contrast, does have personal knowledge of these matters. See Davis Dec. ¶14. Salander's silence here continues Defendants' concealment of the truth concerning these issues. By failing to ask Salander, and instead instructing Plaintiff to take Andrew Kelly's deposition (Favuzza Dec. ¶18), Ms. Favuzza joins the conspiracy of silence.

As Defendants did not "employ reasonable diligence and energy." NBA, at 377, Plaintiff respectfully requests that the Court hold Defendants in contempt.

---

[7] The case Defendants cite for the notion that a court may "excuse unintentional or technical noncompliance with an order," Energy Capital Co. v. Caribbean Trading & Fid. Corp, No. 93 Civ. 8100, 1996 U.S. Dist. LEXIS 4121, at *4 (S.D.N.Y. Apr. 4, 1996), actually states that "the Court may nevertheless excuse any unintentional or technical noncompliance with the Order *if* [defendant] *is able to demonstrate that he made all reasonable efforts to comply.*" Id. at *2 (emphasis added). Such is not the case here, and the extensive violations here are not merely technical.

## II. DEFENDANTS SHOULD BE ORDERED TO TURN OVER ALL TRUST FUNDS DEFENDANTS HOLD FOR THE SOLE BENEFIT OF PLAINTIFF

This Court should issue an injunction requiring Defendants to turn over Plaintiff's trust funds. Defendants do not dispute that under Article 12 of NYACA Defendants are required to hold all of the Works they received from Plaintiff as "trust property . . . for the benefit of [Plaintiff]" and all of the proceeds from sales of the Works as "trust funds . . . for the benefit of [Plaintiff]." NYACA, § 12.01.1(a) (McKinney 1984 Supp. 2007). Defendants admit they "have never asserted a right in the Works." (Defs' Opp. at 19.) Because NYACA creates the same rights in sales proceeds as it does in the Works from which they were derived, Defendants' admission applies equally to the sales proceeds at issue. In fact, Defendants have repeatedly admitted that they owe Plaintiff all sales proceeds for all Works sold. (See Defs' Opp. at 19; Davis Dec. ¶48 and Exs. 10 and 11.) Documents prepared by Defendants show that their reported sale prices for more than three-quarters of the Works total $9,382,500. (Davis Dec. ¶55.)[8] This unrefuted evidence demonstrates, at the very least, that Plaintiff is substantially likely to succeed on the merits of his NYACA and replevin claims at issue in this Motion.

Defendants do not argue that they will suffer hardship should they be enjoined from misappropriating Plaintiff's trust fund sales proceeds for their own purposes. See B.U.S.A. Corp. v. Ecogloves, Inc., No. 05 Civ. 9988 (SCR), 2006 WL 3302841, at *7 (S.D.N.Y. Jan. 31, 2006) (finding that balance of hardships favored plaintiff since injunction would prevent defendants from engaging in conduct "which they cannot do regardless of the injunction").

---

[8] Without any explanation, Defendants make the conclusory statement that there are amounts that are "heavily contested by the parties." (Defs' Opp. at 19.) Defendants have admitted the amounts and offer no evidence that the trust amounts they owe should be any different than the sales proceed amounts they reported. (See Davis Dec ¶55.) Defendants also seek to avoid an injunction by arguing that confusion may exist regarding the "amount that is actually owed to the Plaintiff." (Defs' Opp. at 20.) If any confusion exists – and Defendants do not explain what it may be – it is a direct consequence of Defendants' failure to comply with the expedited discovery provided for in the Order. Defendants' failure to provide a complete and accurate accounting of the sales prices for Works they sold should not be rewarded by allowing them to escape the issuance of the preliminary injunction sought here.

297664                                                    7

Moreover, in the face of extensive evidence of Defendants' dire financial situation and their repeatedly misappropriating Plaintiff's property, Defendants submit absolutely no evidence to dispute that Plaintiff will lose additional trust funds if an injunction is not ordered. The balance of hardships therefore tips decidedly in favor of Plaintiff.

Defendants disingenuously challenge the irreparable harm Plaintiff will suffer.[9] Defendants erroneously argue that since Plaintiff already suffered irreparable harm as a result of Defendants' actions, "any irreparable harm claimed by Plaintiff is not imminent." (Defs' Opp. at 22). Merely because some harm has occurred does not mean more will not occur. The fact is that Plaintiff does not know to what extent Defendants dissipated his trust funds. Nor does he know where Defendants may be keeping his trust funds or, if they do not have them, what they did with them. Defendants, in contrast do know all of this information, but they refuse to disclose it. They should not be permitted to reap the rewards of their continued concealment. There is extensive evidence of Defendants' past misappropriation of Plaintiff's Works of art, and Defendants' non-payment of the trust fund sales proceeds for Plaintiff's Works indicates that Defendants have misappropriated some of that property as well. In the face of this evidence, Defendants offer no assurance that they will not continue to misappropriate Plaintiff's property.[10]

---

[9] Defendants likewise argue disingenuously that Plaintiff is not entitled to this preliminary injunction because he requested such relief in his motion on June 27, 2007, but such relief was absent from the Order. Defendants fail to inform the Court that stipulated Order's omission of such relief was a direct result of the following representations of Defendants' counsel, David E. Mollon, during the negotiation of the stipulation: (1) that Defendants did not have enough money and therefore could not and would not stipulate to such relief; and (2) that Defendants, in exchange for Plaintiff's holding this provision in abeyance, would negotiate in good faith for a complete resolution of this dispute. (Reply Dec. ¶10.) The Order even expressly allows a motion for further injunctive relief. Because Defendants' entire settlement effort consisted of attending one meeting prior to August 10th deadline, and because of escalating news of Defendants' demise and the extensive documentary evidence from non-parties showing Defendants' gross violations of Plaintiff's rights and illegal use of his property, the preliminary injunctive relief sought here has become critical.

[10] Defendants also offer no evidence to demonstrate whether they dissipated all or some of the trust funds. Moreover, Defendants cite to no law to support their illogical premise that their trust fund obligation disappears if they wrongfully dissipated the trust funds. This premise is particularly faulty if Defendants commingled various funds. Here again, however, to try to escape an injunction, Defendants are trying to capitalize on their concealment

In addition, as the number of lawsuits against Defendants continues to grow, the likelihood of further extreme harm to Plaintiff becomes even more imminent.[11] The only meaningful assurance that Plaintiff can receive now is preliminary injunctive relief.

Defendants argue that injunctive relief is not appropriate where money damages suffice. They ignore, however, law referenced even in a case they cite, that where, as here, "parties have demonstrated such a strong likelihood that their opponent will be unable to pay[,] courts have awarded them equitable relief."[12] Rosewood Apt. Corp. v. Perpignano, 200 F. Supp. 2d 269, 278 (S.D.N.Y. 2002); see also Interel Envtl. Techs., Inc. v. United Jersey Bank, 894 F. Supp. 623, 631 (S.D.N.Y. 1995) (cited by Defendants) (irreparable harm shown where "unavailability or at least inadequacy of money damages"); see Moving Dec. ¶6 at Ex. 9 (Defendants admit they have "a liquidity crises" and are concerned their "house of cards will collapse").

Defendants also neglect to address that part of the court's ruling in Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc., No. 00 Civ. 8051 (JSM), 2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000), that "while Plaintiff seeks to freeze Defendants' assets pending payment for goods sold, Plaintiff asserts an equitable interest in those funds as beneficiaries of the statutory trust . . .[and] courts have traditionally had the power to enjoin defendants from dissipating funds that are the subject of the underlying suit." Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc., No. 00 Civ.

---

of information that only they have regarding the status of the funds. Defendants should not be so rewarded for their multiple improper and illegal acts.

[11] In one recent lawsuit against Defendants, Diamond v. Salander-O'Reilly Galleries LLC, et al. Index No. 602284/07 (Sup. Ct. N.Y. Cnty.), it became necessary for Plaintiff to seek to intervene to protect his rights in the trust funds against an attachment of Defendants' bank accounts sought by the plaintiffs in that case. Although the attachment was denied because plaintiffs did not establish fraud as required by the New York attachment statute, the case demonstrates how Defendants' precarious financial position has placed Plaintiff's right to his trust funds in serious jeopardy. (Reply Dec. ¶45.)

[12] Defendants' reliance on Iron Mountain Info. Mgm't, Inc. v. Taddeo, 455 F. Supp. 2d 124 (E.D.N.Y. 2006), Interel Envtl. Techs., Inc. v. United Jersey Bank, 894 F. Supp. 623 (E.D.N.Y. 1995), and Jessup v. Am. Kennel Club, Inc., 862 F. Supp. 1122 (S.D.N.Y. 1994), is wholly misplaced. In those cases, unlike here, the plaintiff *could* be compensated by money damages and the money at issue *did not constitute a trust asset*. Swan Brewery Co. Ltd. v. U. S. Trust Co., 145 F.R.D. 40 (S.D.N.Y. 1992), which Defendants also cite, is similarly inapplicable because in that case, while plaintiff was a trust beneficiary, its claims involved money damages only.

8051 (JSM), 2000 WL 1610790 at *2 (S.D.N.Y. Oct. 27, 2000). As in Wishnatzki & Nathel, Plaintiff, here, as a beneficiary of a statutory trust, has an equitable interest in the funds at issue. This Court has the power to grant preliminary injunctive relief regarding that fund property which is the subject of this action. On his NYACA and replevin claims, Plaintiff seeks all trust property consisting of the Works and funds. Defendants concede they have "never asserted a right in the Works." (Defs' Opp. at 19.) Because Defendants' improper actions converted at least some of those Works held in trust into proceeds held in trust, some trust property here happens to be money. Such trust property is the proper subject for an injunction. See Horizon Mktg. v. Kingdom Int'l Ltd., 244 F. Supp. 2d 131 (E.D.N.Y. 2003); Wishnatzki.[13] Accordingly, this Court should issue the requested preliminary injunction.

## CONCLUSION

For all of the forgoing reasons, Plaintiff respectfully submits that this Court should grant the relief requested in Plaintiff's moving papers in all respects.

Dated: New York, New York
September 11, 2007

Flemming Zulack Williamson Zauderer LLP

By: _____
Dean R. Nicyper (DN-7757)
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Attorneys for Plaintiff Earl Davis

---

[13] In attempting to distinguish these cases, Defendants point to distinctions without a difference. Defs' Opp. at 21. That these cases involved a statutory trust pursuant to the Perishable Agricultural Commodities Act instead of NYACA does not diminish their precedential value. These cases demonstrate that, where a statutory trust exists, preliminary injunctive relief preventing the dissipation of assets to be held for the benefit of the trust beneficiary is proper. Defendants also argue that the court in Wesselmann v. Int'l Images, 172 Misc. 2d 247, 657 N.Y.S.2d 284 (Sup. Ct. N.Y. Co. 1996), did not issue a preliminary injunction mandating payment of trust proceeds under NYACA. The court, however, never ruled on that issue because the plaintiff in that case *never requested a preliminary injunction mandating payment of trust proceeds*. The court did grant an injunction with respect to NYACA trust property consisting of works of art. The NYACA trust property at issue here includes both art and trust funds, and Wesselmann is instructive in granting an injunction relating to all such NYACA trust property.